RICHARD CARPENTER & another *vs.* YOUNG MEN'S CHRISTIAN ASSOCIATION.

Suffolk.  February 9, 1949. — June 6, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Corporation*, Charitable corporation.  *Charity.*

A corporate Young Men's Christian Association, supported mainly by contributions, organized for the "purpose of improving the spiritual and mental condition of young men," and subscribing to the declaration that it was a "fellowship of men and boys united . . . for the purpose of developing Christian personality and building a Christian society," could not properly have been found not to be a charitable corporation.

A playground, conducted by a charitable Young Men's Christian Association corporation, at which it undertook for moderate dues to care for and supervise the play of children, could not properly be found to have been conducted as a business.

The mere fact, that children of both sexes were admitted to a playground conducted by a charitable Young Men's Christian Association corporation, did not justify a finding that the playground was not an activity falling within the scope of the corporation's purpose of "improving the spiritual and mental condition of young men."

TORT.  Writ in the Superior Court dated December 9, 1944.

The action was tried before *Forte*, J.

*M. Michelson*, for the plaintiffs.

*R. L. Mapplebeck*, for the defendant.

WILKINS, J.  The minor plaintiff, seven years of age, who was hurt at a playground of the defendant, brings this

action of tort. There is a count by his father for consequential damages. G. L. (Ter. Ed.) c. 231, § 6A, inserted by St. 1939, c. 372, § 1. The jury returned verdicts for the plaintiffs, but the judge, under leave reserved, entered verdicts for the defendant, and the plaintiffs excepted.

The jury could have found these facts: The defendant owned and operated a playground for children, known as "Y Land," in the Dorchester district of Boston. On August 15, 1944, the minor plaintiff (hereinafter called the plaintiff) was sent to "Y Land" and "entrusted to the defendant." The plaintiff's father paid the defendant fifty cents a week under an agreement by which the defendant undertook to supervise his play and to care for him. The defendant had employees whose duty it was to watch and supervise the children, who were divided into age groups. The children brought their lunches and bought milk (but not of the defendant) at the playground. On the day of the injury the supervisor of the plaintiff's group had lunch with the group about noon and immediately afterwards went away. Thereafter until about 3:30 P.M., the time of the injury, there was no supervisor watching that group, but there were four other supervisors on duty watching other groups. The plaintiff and another boy of his age from his group wandered over to a "stunt bar," five and one half feet high, erected for older children. The plaintiff climbed upon a stool under the bar and, reaching as high as he could, grasped the bar. The other boy removed the stool. The plaintiff hung from the bar, calling in vain for help. Finally, becoming tired and unable longer to maintain his hold, he fell to the ground and broke his leg. The "plaintiff had not been told not to climb up the stunt bar."

The issues are whether there was evidence that the plaintiff's injuries were caused by the defendant's negligence and, if so, whether the defendant is exempt as a domestic charitable corporation. On the latter issue there was, in addition to evidence that the defendant paid no real estate taxes, a stipulation, hereinafter summarized, which was read to the jury.

We assume, without deciding, that the plaintiff's injuries could have been found to be due to the defendant's negligence. See *Collentine* v. *New York*, 279 N. Y. 119; *Howard* v. *Tacoma School District No. 10*, 88 Wash. 167; *Holt* v. *School District No. 71*, 102 Wash. 442; Restatement: Torts, § 320.

We proceed to the question whether the defendant could have been found to be subject to liability for such negligence. "A charitable corporation is not liable for negligence in the course of activities within its corporate powers carried on to accomplish directly its charitable purposes. This is true even though such activities incidentally yield revenue. On the other hand, there is liability for negligence in the course of activities incidental to the corporate powers but primarily commercial in character, though carried on to obtain revenue to be used for the charitable purposes of the corporation. *McKay* v. *Morgan Memorial Coöperative Industries & Stores, Inc.* 272 Mass. 121, 124, and cases cited." *Reavey* v. *Guild of St. Agnes*, 284 Mass. 300, 301–302. See Scott on Trusts, §§ 402, 402.1. Compare Restatement: Trusts, § 402. The plaintiff does not question the foregoing, but argues that it could have been found that the defendant was not a charitable corporation, or that the playground was conducted as a business, or that operating the playground was not a purpose for which the defendant was organized. We, accordingly, consider those contentions.

The stipulation contained the following: The defendant was incorporated under the name of "Boston Young Men's Christian Association" by St. 1852, c. 73, for the "purpose of improving the spiritual and mental condition of young men, with all the powers and privileges, and subject to all the duties, liabilities, and restrictions, set forth in the forty-fourth chapter of the Revised Statutes." The defendant's constitution declares, "In spirit and in practice we conform to the purpose of the Young Men's Christian Associations of the United States of America as expressed in the following statement: 'The Young Men's Christian Association we regard as being in its essential genius a

world-wide fellowship of men and boys united by a common loyalty to Jesus Christ for the purpose of developing Christian personality and building a Christian society.'" Throughout its corporate existence the defendant has had an annual deficit. It was supported by popular subscriptions until it became an agency of the Greater Boston Community Fund. In 1944 the defendant ran at a loss of $164,629.91, of which $139,920.54 was received from the Community Fund and the balance from incomes from other funds. The Dorchester Branch, with which the playground was connected, ran at a loss of $10,536.55, expenditures being $12,367.01 and income $1,831.46. "Y Land" comprises four and one half acres surrounded by a seven-foot fence. Its activities consist of softball, track, basketball, folk dances, horseshoes, hand ball, movies, clay modeling, painting, paper craft, scrap book, sandbox, circle game, and the horizontal bar in question. No refreshments are sold there by the defendant. "Y Land" has a paid staff, as well as volunteers who serve solely for the experience. The defendant's officers and directors are elected by the members. The directors are unpaid. Each branch has an unpaid board of managers elected by the members of the branch. The dues for membership in the Dorchester Branch are fifty cents weekly for the groups six years of age and under, and aged seven and eight, and for the older girls; $1 a year for boys about twelve years of age; and $2 a year for young people and adults. The summer enrolments in these groups were respectively sixty-six, fifty, forty-eight, thirty, fifty, and two hundred. At the Huntington Avenue Branch in 1944 the dues ranged from $5 a year for boys aged nine through fourteen to $24 a year for those thirty-one years of age and older. Among the benefits received by such members are the use of club rooms, reading rooms, gymnasium, swimming pool, lectures, food shop, chess, and checkers. At the Huntington Avenue Branch there were folk dancing and social dancing "under the U. S. O."

The jury could draw inferences from the stipulation as they could from other evidence, and review here is confined

to considering whether such inferences were unwarranted as matter of law. *Scaccia* v. *Boston Elevated Railway,* 317 Mass. 245, 248, and cases cited.

We are of the opinion that it could not have been inferred that the defendant was not a charitable corporation. In *Little* v. *Newburyport,* 210 Mass. 414, an action to recover a tax, the question was as to the exemption of the Young Men's Christian Association of Newburyport under the local tax statute (see now G. L. [Ter. Ed.] c. 59, § 5, Third). The trial judge refused to rule as matter of law that judgment should be entered for the defendant city, and found for the plaintiff taxpayer. It was said, at page 415, "It may be scarcely possible under our statute . . . to lay down a general rule as to the character of the Young Men's Christian Associations which have now become so numerous. In each case the question will be whether the institution is in its character literary, benevolent, charitable or scientific within the meaning of those words in the statutes; and the answer will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration." At pages 417–418, it was said, "The association carries on a work which is intended and adapted for the improvement and elevation of young men, not only to bring them under good influences, but to promote their moral, mental and physical welfare. It incurs expense for this purpose, for meeting which it relies mainly upon charitable contributions. In its essence, though not giving charity in the narrow sense of that word, it is a benevolent or charitable institution within the meaning of those words in the statute. . . . The fact that some of the benefits of the association are afforded only to its members is not material under the circumstances now presented. The element of indefiniteness in the recipients of a bounty is of course essential to the character of a public charity. But the privilege of membership is open to all upon payment of a moderate fee, without any other restriction than what

has been stated as to sex and age. This of itself would be sufficient to meet the requirement. . . . [The] judge at the trial could find that the dominant purpose of the association was its work for the public good, and that the work done for its members was the means adopted for this purpose rather than the end finally aimed at." The meagerly reported case of *Chapin* v. *Holyoke Young Men's Christian Association*, 165 Mass. 280, was distinguished (page 418) upon the few facts there proved. The *Newburyport* case was followed in *Springfield Young Men's Christian Association* v. *Assessors of Springfield*, 284 Mass. 1, 5.

In the case at bar the stipulation is silent as to whether there are restrictions on membership. We think, however, that enough appears to preclude a finding that the defendant was not a charitable corporation. Support for our conclusion is to be found in the great weight of authority elsewhere. *Saffron* v. *Young Men's Christian Association of Chicago*, 317 Ill. App. 149. *Andrews* v. *Young Men's Christian Association*, 226 Iowa, 374, 383–384. *Servison* v. *Young Men's Christian Association*, 230 Iowa, 86. *Averback* v. *Young Men's Christian Association of Covington*, 250 Ky. 34. *Eads* v. *Young Women's Christian Association*, 325 Mo. 577. *Bruce* v. *Young Men's Christian Association*, 51 Nev. 372, 381. *Goodell* v. *Union Association of the Children's Home*, 2 Stew. (N. J.) 32, 35. *Waddell* v. *Young Women's Christian Association*, 133 Ohio St. 601, 606. *Emrick* v. *Pennsylvania Railroad Young Men's Christian Association of Crestline*, 69 Ohio App. 353. *Betts* v. *Young Men's Christian Association of Erie*, 83 Pa. Super. Ct. 545, 553. *Kalinowski* v. *Young Women's Christian Association*, 17 Wash. (2d) 380. *Bachman* v. *Young Women's Christian Association*, 179 Wis. 178. *Waldman* v. *Young Men's Christian Association of Janesville*, 227 Wis. 43. Restatement: Trusts, § 374, comment g. Scott, Trusts, § 374.11. 10 Am. Jur., Charities, § 136. See *Thornton* v. *Franklin Square House*, 200 Mass. 465.

Neither could it have been inferred that the playground was operated as a business enterprise for profit. In *Moran*

*v. Plymouth Rubber Co. Mutual Benefit Association,* 307 Mass. 444, the defendant's negligent employee was apparently engaged in the commercial activity of selling food. Here the defendant sold no refreshments at the playground. Nor did the defendant lose its charitable character because of operating a playground for young children of both sexes, the while its statutory purposes were for the "purpose of improving the spiritual and mental condition of young men." Provided there is adherence in the main to the declared purpose of the charity, incidental variations do not destroy the right to exemption. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 8, and cases cited. *Assessors of Lancaster* v. *Perkins School,* 323 Mass. 418, 422.

*Exceptions overruled.*