JOSEPH E. ENGLISH & another,[1] guardians,[2] vs. NEW ENGLAND
MEDICAL CENTER, INC., & others.[3]

Suffolk. April 3, 1989. — July 20, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Medical Malpractice*, Hospital. *Charity. Practice, Civil*, Damages, Jury
trial. *Damages*, Tort. *Constitutional Law*, Alteration of common law
rights, Jury, Equal protection of laws. *Due Process of Law*, Alteration
of common law rights.

General Laws c. 231, § 85K, which limited the recovery of plaintiffs in a
medical malpractice claim against a hospital to $20,000, infringed no
right of the plaintiffs to a trial by jury, as guaranteed by art. 15 of the
Declaration of Rights of the Massachusetts Constitution. [426-427]
General Laws c. 231, § 85K, which limited the recovery of plaintiffs in a
medical malpractice claim against a hospital to $20,000, did not violate
the plaintiffs' rights under the equal protection and due process clauses
of the Massachusetts and United States Constitutions where it was not
shown that the cap on damages had no rational relationship to the statute's
legitimate objective of preserving charitable assets. [427-431]

CIVIL ACTION commenced in the Superior Court Department
on May 17, 1983.

The case was tried before *John C. Cratsley*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Charles S. Mancuso* (*Kevin G. McIntyre* with him) for the
plaintiffs.

*Carol A. Griffin* (*David M. McCarthy & Laurie J. Condos*
with her) for the defendant.

---

[1] Elizabeth English.

[2] Of Kerrie Ann English.

[3] Glenn Wing and Lloyd Wilcox, who are not parties to this
appeal.

The following submitted briefs for amici curiae:

*John W. Van Lonkhuyzen & Robert A. Faucher* for Beth Israel Hospital Association & others.

*Bill Wagner* of Florida, *Jeffrey Robert White* of the District of Columbia, *& Anthony Tarricone* for Association of Trial Lawyers of America.

*Walter H. Mayo, III, & Robert E. Cowden, III,* for Massachusetts Council of Human Services Providers, Inc.

*Patrick R. Carroll, William T. McGrail, Dorothy Grandolfi Wagg, Vincent F. O'Rourke, Jr., & Barry A. Bachrach* for Massachusetts Hospital Association, Inc.

*John H. Mason, Deborah S. Steenland, & John W. Spillane* for Independent School Association of Massachusetts & another.

O'CONNOR, J. This is a medical malpractice case arising out of treatment rendered to Kerrie Ann English by two physicians at the defendant's hospital. The jury returned verdicts in favor of the physicians, who were originally defendants, but against the hospital, and assessed damages in the amount of $350,000. In response to the hospital's motion, the trial judge reduced the award to $20,000 pursuant to G. L. c. 231, § 85K (1986 ed.). On appeal, the plaintiffs challenge the reduction of the verdict as violating the equal protection and due process clauses of the Massachusetts and United States Constitutions and the trial by jury guarantee of art. 15 of the Declaration of Rights of the Massachusetts Constitution. We transferred the case to this court on our own initiative.[4]

This court adopted the doctrine of charitable immunity in 1876. In *McDonald* v. *Massachusetts Gen. Hosp.*, 120 Mass. 432, 436 (1876), we held that Massachusetts General Hospital, a public charity, would not be liable to one injured by the negligence of agents of the hospital. The court reasoned that the

---

[4] We acknowledge the filing of amicus curiae briefs on behalf of the following organizations: Independent School Association of Massachusetts; Massachusetts Association of Nonprofit Schools and Colleges; Massachusetts Council of Human Services Providers, Inc.; Massachusetts Hospital Association, Inc.; Association of Trial Lawyers of America; The Beth Israel Hospital Association; Brigham and Women's Hospital, Inc.; The Children's Hospital; Dana Farber Cancer Institute; Massachusetts General Hospital; Mount Auburn Hospital; and New England Deaconess Hospital.

hospital held its funds in trust for the benefit of the public, and that it would be an unlawful diversion of those funds to apply them to the satisfaction of a judgment based on the negligence of hospital agents. *Id.* at 435-436. See *Roosen* v. *Peter Bent Brigham Hosp.*, 235 Mass. 66, 69 (1920). Following our decision in *McDonald* v. *Massachusetts Gen. Hosp.*, *supra*, we consistently applied the charitable immunity doctrine to hospitals and other charitable organizations until G. L. c. 231, § 85K, became effective on September 16, 1971. St. 1971, c. 785. See, e.g., *Ricker* v. *Northeastern Univ.*, 361 Mass. 169, 172 (1972) (private university); *Boxer* v. *Boston Symphony Orchestra, Inc.*, 342 Mass. 537, 538-541 (1961) (symphony orchestra); *Carpenter* v. *Young Men's Christian Ass'n*, 324 Mass. 365, 369 (1949) (association promoting moral, mental, and physical welfare of young men); *Reavy* v. *Guild of St. Agnes*, 284 Mass. 300, 302 (1933) (temporary shelter provided to needy women and children).

In *Simpson* v. *Truesdale Hosp., Inc.*, 338 Mass. 787, 787-788 (1958), the plaintiff urged us to overrule *McDonald* v. *Massachusetts Gen. Hosp.*, *supra.* We declined, noting that "[w]hile as an original proposition the doctrine might not commend itself to us today, it has been firmly imbedded in our law for over three quarters of a century and we think that its 'termination should be at legislative, rather than at judicial, hands' (citations omitted)." Later, in *Colby* v. *Carney Hosp.*, 356 Mass. 527, 528 (1969), we again observed that any renunciation of the charitable immunity doctrine would be best accomplished by legislative action. However, on the assumption that legislative action would be unlikely in the near future, we announced our intention to abolish the doctrine "the next time we [were to be] squarely confronted by a legal question respecting [it]." *Id.* In 1971, after our decision in *Colby*, the Legislature enacted G. L. c. 231, § 85K. Section 85K abolishes the doctrine of charitable immunity, and limits the liability of charitable institutions to $20,000 if the tort was committed in the course of an activity carried on to accomplish the purpose of the charitable organization.

In *Colby*, *supra*, the defendant in its answer had advanced charitable immunity as a defense. The plaintiff demurred, contending that the doctrine violated the Federal and Massachusetts Constitutions. We affirmed the judge's overruling of the demurrer, saying that "[n]othing ha[d] been brought to our attention suggesting that the doctrine of charitable immunity is repugnant to any provision of the Constitutions of the United States and the Commonwealth." *Id.* at 528. The plaintiffs now challenge the constitutionality of the $20,000 statutory cap. Consistently with our statement in *Colby*, which at least suggested that the doctrine of charitable immunity is constitutional, we hold today that the statutory cap also is constitutional. We are not without misgivings about the paltriness of the $20,000 cap, especially in light of the decline in the value of the dollar since 1971, but we cannot correctly declare the statute to be unconstitutional. A change in the amount of the cap may be appropriate but that is a legislative decision.[5] We affirm the judgment below.

The plaintiffs challenge § 85K as violating their right to a jury trial guaranteed by art. 15. It does not. The right to a jury trial does not grant to a party the right to put to a jury any question he or she wishes. Rather, the right to a jury trial means that, with respect to those questions of fact that the substantive law makes material, the party has the right to have the determination made by a jury. See *Karlowski* v. *Kissock*, 275 Mass. 180, 182 (1931); *Bothwell* v. *Boston Elevated Ry.*, 215 Mass. 467 (1913). No question material to the plaintiffs' cause of action was withdrawn from the jury. Under the substantive law of torts of this Commonwealth, charitable organizations are not liable for personal injuries in excess of $20,000, and therefore the plaintiffs had no right to a jury determination of damages in excess of that amount. *Pinnick* v. *Cleary*, 360 Mass. 1 (1971), is on point. In *Pinnick*, we held that, although the no-fault automobile insurance statute, St. 1970, c. 670,

[5] According to the Consumer Price Index for All Urban Consumers U.S. City Average All Item Index published by the United States Department of Labor Bureau of Labor Statistics, the purchasing power of $1 in 1971 was the same as the purchasing power of $3.04 in April, 1989.

eliminated an individual's right to damages for pain and suffering unless his or her medical expenses were at least $500,[6] or the injuries were of a particular kind, the statute did not violate the jury trial guarantee of art. 15. *Id.* at 31.

The case of *Johnson* v. *St. Vincent Hospital, Inc.*, 273 Ind. 374 (1980), like the present case, raised the question whether the imposition of a cap on damages violates a right to jury trial provided by a State constitution. Although the cap in that case was $500,000, the principle involved is the same. In rejecting the plaintiffs' argument that the limitation on damages violated their jury trial rights, the Supreme Court of Indiana reasoned that "[t]he Legislature may terminate an entire valid and provable claim through a statute of limitation. It may validly cause the loss of the right to trial by jury through failure to comply with the requirement to assert the right by procedural rule. It is the policy of this Act that recoveries be limited to $500,000, and to this extent the right to have the jury assess damages is available. No more is required by Art. I, § 20, of the Indiana Constitution in this context." *Id.* at 401. Similarly, art. 15 guaranteed the plaintiffs' right to have the jury assess damages up to $20,000, but nothing more. Thus, there was no infringement of the plaintiffs' right to jury trial.

We turn our attention to the plaintiffs' other contentions, namely, that § 85K violates their rights to equal protection and substantive due process by impermissibly infringing on "the personal, substantive right of a tort victim to recover damages." We have repeatedly said that those who challenge the constitutionality of a statute that does not burden a suspect group or a fundamental interest "carry a heavy burden in seeking to overcome the statute's presumption of constitutionality." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 371 (1979), quoting *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374

---

[6] But see St. 1988, c. 273, § 55 (now $2,000).

We note that St. 1988, c. 273, § 15, amended the definition of the term, "Personal injury protection," in G. L. c. 90, § 34A, to provide no-fault benefits of $8,000, a four-fold increase of the previous $2,000 amount.

Mass. 181, 190 (1978). *Klein* v. *Catalano*, 386 Mass. 701, 706-707 (1982).

The statute at issue does not burden a suspect group, and "the personal, substantive right of a tort victim to recover damages" is not a "fundamental interest." For purposes of equal protection analysis under the Federal and State Constitutions, our opinions declare that, "[a]bsent a showing that a statute burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate State interest." *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986). *Klein* v. *Catalano*, *supra* at 715. The statute "only need[s] be supported by a conceivable, rational basis." *Fine* v. *Contributory Retirement Appeal Bd.*, 401 Mass. 639, 641 (1988). Nonetheless, the plaintiffs urge us to employ a third, intermediate level of scrutiny, one that is less strict than is appropriate to determine the constitutionality of a statute that burdens a suspect class or fundamental interest but stricter than the "rational basis" test. See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 n.6 (1977). Under such a third level of review, the plaintiffs tell us, quoting *Reed* v. *Reed*, 404 U.S. 71, 76 (1971), the court must determine whether the classifications created by the statute are "reasonable, not arbitrary" and "rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Quoting *Massachusetts Bd. of Retirement* v. *Murgia*, 427 U.S. 307, 320 (1970) (Marshall, J., dissenting), the plaintiffs say that the court should make its determination "only after a reasonably probing look at the legislative goals and means, and at the significance of the personal rights and interests invaded."

We agree with the plaintiffs that equal protection analysis requires the court to look carefully at the purpose to be served by the statute in question and at the degree of harm to the affected class. We have observed that characterizing the tests to be applied to determine the constitutional validity of legislation as "reasonable relation" and "strict scrutiny" is a "shorthand for referring to the opposite ends of a continuum of consti-

tutional vulnerability determined at every point by the competing values involved." *Marcoux* v. *Attorney Gen.*, 375 Mass. 63, 65 n.4 (1978). However, our acceptance of that method of analysis does not require us to adopt a third level of review. The rational basis test "includes a requirement that an impartial lawmaker could logically believe that the classification would serve a legitimate public purpose that transcends the harm to the members of the disadvantaged class." *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 452 (1985) (Stevens, J., concurring). In connection with such an analysis, the significance of a limitation of $20,000 on recovery against charities for personal injuries is a relevant factor.

The plaintiffs' equal protection attack is twofold. They argue that (1) § 85K has no legitimate purpose, and (2) even if § 85K has a legitimate purpose, the means chosen by the Legislature to accomplish the objective bear no rational relation to it. The objective of § 85K clearly is to protect the funds of charitable institutions so they may be devoted to charitable purposes. That objective is just as clearly legitimate. If a charity's property were "depleted by the payment of damages its usefulness might be either impaired or wholly destroyed, the object of the founder or donors defeated, and charitable gifts discouraged." *St. Clair* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 662, 666 (1988), quoting *Farrigan* v. *Pevear*, 193 Mass. 147, 149 (1906). The plaintiffs argue that the protection of charitable organizations' property against judgments in personal injury actions is not a legitimate objective because the availability of insurance, the "Universal Health Care Bill," the institution of malpractice tribunals pursuant to G. L. c. 231, § 60B (1986 ed.), modification of the collateral source rule pursuant to G. L. c. 231, §§ 60F, 60G, and 60H (1986 ed.), and the Statewide uncompensated care pool to reimburse hospitals for services rendered to nonpaying emergency room patients pursuant to G. L. c. 6A, § 75 (1986 ed.), make statutory protection, at least as to hospitals, unnecessary. However, the availability of these sources of protection of charitable funds is not inconsistent with a legislative purpose to provide still further protection.

The plaintiffs also argue that the discrimination between the victims of charitable tortfeasors and other victims, between the seriously injured victims of charitable tortfeasors and those with minor injuries, between "wealthy" charities and impoverished ones, and between charities and noncharities, wrought by § 85K, cannot be viewed as a rational means of accomplishing the legislative objective, even if the objective is considered legitimate, of protecting charitable funds. The plaintiffs emphasize the low amount of the statutory cap, arguing that frequently the expenses involved in litigating a serious personal injury negligence case against a hospital may far exceed the allowable recovery. Nevertheless, while we acknowledge the validity of the plaintiffs' assertion, it is not the court's prerogative to determine whether a more equitable distribution of the burden of negligently inflicted personal injuries could be devised. We cannot say that there is no rational relationship between § 85K's cap on damages and the statute's legitimate objective of preserving charitable assets. See *Hearn* v. *Massachusetts Bay Transp. Auth.*, 389 Mass. 404, 406 (1983).

The plaintiffs' final argument is that § 85K offends their substantive due process rights by failing to provide an adequate substitute for the common law right to recover full compensation for negligently inflicted personal injuries. In cases such as this, where the right infringed on is not a "fundamental" right, we have stated that the question under the due process clause of the Federal Constitution is "whether the statute bears a reasonable relation to a permissible legislative objective," *Pinnick* v. *Cleary*, *supra* at 14, and, under the analogous provisions of the State Constitution as whether the statute "bears real and substantial relation to public health, safety, morals, or some other phase of the general welfare." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, *supra* at 373, quoting *Sperry & Hutchinson Co.* v. *Director of the Div. of the Necessaries of Life*, 307 Mass. 408, 418 (1940). Citing *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 43 (1983), and *Klein* v. *Catalano*, 386 Mass. 701 (1982), the plaintiffs argue that "[i]f no substitute remedy is supplied, then the abrogation [of the common law right] must

be rationally related to a permissible legislative objective." In addressing the plaintiffs' equal protection argument, we determined that § 85K is rationally related to a permissible legislative objective. Further discussion is not required. We conclude that § 85K does not offend the plaintiffs' due process rights.

*Judgment affirmed.*