415 Mass. 218 (1993)
612 N.E.2d 1149
JEAN MURPHY
vs.
COMMISSIONER OF THE DEPARTMENT OF INDUSTRIAL ACCIDENTS & another.[1]
Supreme Judicial Court of Massachusetts, Suffolk.
November 3, 1992.
May 12, 1993.
Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.
Jerry E. Benezra (F. Anthony Mooney & Joseph Burke with him) for the plaintiff.
Ellen M. Caulo, Assistant Attorney General, for the defendants.
The following submitted briefs for amici curiae.
*219 Augustus J. Camelio for American Federation of State, County & Municipal Employees.
Brian C. Cloherty for Teamsters Union Local 25, Gerald L. Pellegrini for Graphic Communications International Union Local 48B & others, Walter A. Costello, Jr., for Massachusetts Academy of Trial Attorneys, & Elaine Epstein & Elizabeth N. Mulvey for Massachusetts Bar Association, joined in a brief.
Paul A. Gargano, pro se.
Thomas J. Wynn, Michael C. Akashian, Walter J. Korzeniowski & Leonard Schneider for Injured Workers United.
Wendy M. Bittner for Massachusetts AFL-CIO Council.
LIACOS, C.J.
General Laws c. 152, § 11A, as appearing in St. 1991, c. 398, § 30, provides that an employee who seeks to challenge an administrative judge's denial of workers' compensation benefits must pay a fee if the case involves a medical issue and if the employee wishes to proceed with the assistance of counsel.[2] The statute imposes no such fee on pro se claimants. In her action for declaratory and injunctive relief, the plaintiff, Jean Murphy, challenges the constitutionality of the fee provisions of § 11A. We hold that the challenged portions of § 11A violate the equal protection clause of the Fourteenth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights.[3]
The relevant facts are these. William Murphy, the plaintiff's husband, worked as an employee of A.A. Busch & Co. of Massachusetts, Inc., until August of 1991. At that time, Murphy suffered a myocardial infarction for which he was *220 hospitalized. Alleging that his heart condition arose from his employment, Murphy filed a claim for workers' compensation benefits with the Department of Industrial Accidents (department). On March 19, 1992, while his case was still pending, Murphy died of a heart attack. The plaintiff moved to amend her late husband's claim to include herself as a party and to request survivorship benefits pursuant to G.L.c. 152, § 31 (1990 ed.). On June 25, 1992, an administrative judge of the department held a "conference" pursuant to G.L.c. 152, § 10A, as amended through St. 1991, c. 398, §§ 27, 28, in the course of which Murphy presented her case with the assistance of an attorney. On July 17, 1992, the judge issued an order denying Murphy's claims.
Murphy then filed a verified complaint in the Superior Court by which she commenced the present case. She also filed an affidavit stating that she wished to obtain a hearing with the department in order to challenge the administrative judge's conference order. Murphy asserted that she wanted to proceed with the assistance of counsel but did not have the financial means to meet the filing fee required by § 11A as a prerequisite to obtaining a hearing.[4] Murphy sought a declaration *221 that the fee requirement of § 11A deprived her of the equal protection of the laws and violated her fundamental rights to seek legal redress for grievances and to proceed with the assistance of an attorney. In addition, Murphy requested a preliminary injunction precluding the department from implementing and enforcing the filing fee provisions of § 11A.
On July 29, 1992, a judge in the Superior Court, after a hearing, denied Murphy's motion for a preliminary injunction. Murphy petitioned a single justice of the Appeals Court for interlocutory relief pursuant to G.L.c. 231, § 118 (1990 ed.). On September 11, 1992, the single justice ordered the department to accept Murphy's claim of appeal as timely for a nominal fee of $1. The single justice also granted "the petitioner leave to take an interlocutory appeal to a full panel of [the Appeals Court] with respect to the propriety of the single justice's order reducing the administrative appeal fee and to the issues presented to the single justice by the petition, including the issue of the constitutionality of that provision of G.L.c. 152, § 11A, as appearing in St. 1991, c. 398, § 30." We transferred the case to this court on our own motion.[5]
*222 Our workers' compensation act, G.L.c. 152, §§ 1-86, as amended through St. 1991, c. 398 (Act), is a "humanitarian measure" which the Legislature first enacted in 1911 (St. 1911, c. 751) in response to strong public dissatisfaction with the remedies provided by traditional tort actions. L. Locke, Workmen's Compensation § 1, at 2 (2d ed. 1981). See Young v. Duncan, 218 Mass. 346, 349 (1914). The Act is based on the legislative judgment that "human loss directly arising out of commercial and industrial enterprises" is part of the operating cost of a business. Zerofski's Case, 385 Mass. 590, 592 (1982), quoting Madden's Case, 222 Mass. 487, 496 (1916). See Ahmed's Case, 278 Mass. 180, 183 (1932). The Act applies only to employees who come within its ambit. See G.L.c. 152, § 24. The Act requires that participating employees waive their right to sue in tort for workrelated injuries. Id. In return, the Act gives these employees the possibility of obtaining compensation for loss of wages or earning capacity caused by a work-related injury, regardless of the fault of their employers or the foreseeability of harm. See Zerofski's Case, supra; Akins's Case, 302 Mass. 562 (1939); Ahmed's Case, supra. See also G.L.c. 152, §§ 13, 30, 31, 34, 34A, 35.
*223 In 1991, the Legislature chose to overhaul the procedures by which injured workers (claimants) may seek compensation under the Act. See St. 1991, c. 398. As amended, the relevant portions of the Act establish four distinct procedural stages.[6] The Act provides for an initial informal conciliatory proceeding in which the claimant and his or her employer's insurer must cooperate with a conciliator in an effort to settle the case. G.L.c. 152, § 10. See 452 Code Mass. Regs. § 1.08 (1993).[7] If the claimant and the insurer do not reach an agreement, they may elect to submit the case to binding arbitration. G.L.c. 152, §§ 10, 10B. If arbitration is not sought, the unresolved claim is referred to the Industrial Accident Board (board) of the department. Id. at §§ 10, 10A.[8]
The referral of a claim to the board triggers the second stage of the process: a "conference" before an administrative judge of the department. Id. at § 10A. See 452 Code Mass. Regs. § 1.10 (1993). The conference procedure was enacted (St. 1971, c. 974) to allow the board "to expedite compensation claims without the necessity of a full hearing." Assuncao's Case, 372 Mass. 6, 9 (1977). At the conference, the parties must "identify the issues in dispute" and "produce a summary of any anticipated testimony." G.L.c. 152, § 10A (1).[9] The parties may also make oral arguments and submit evidence such as reports of injury, affidavits, or medical *224 records. Within seven days after the conference, the judge must issue a written order stating whether and to what extent relief should be granted. Id. at § 10A (2).
A party aggrieved by the judge's order may trigger the third stage of the review process: a "hearing" of his or her claim. G.L.c. 152, § 11. See 452 Code Mass. Regs. § 1.11 (1993). If the aggrieved party's claim involves a disputed medical question, an "impartial medical examiner" must be appointed. G.L.c. 152, § 11A.[10] The impartial examiner must evaluate the claimant's condition and set forth his or her findings in a report.[11] At the hearing, the report constitutes prima facie evidence of the disputed medical issues. Id. The parties may not submit additional reports or depositions of other physicians "by right." Id. However, the administrative judge may authorize the submission of such additional evidence if warranted by "the complexity of the medical issues involved or the inadequacy of the report submitted by the impartial medical examiner." Id.[12] The administrative *225 judge, based on the evidence presented at the hearing, then renders a decision.[13]
Section 11A requires that claimants wishing to proceed to this evidentiary hearing with the assistance of counsel pay the filing fee as a prerequisite to obtaining access to the hearing if they need an "impartial medical examination." Further, § 11A imposes the filing fee on claimants who hired an attorney to assist in the presentation of their claim at the conference stage of the process even if they discharge the attorney prior to the evidentiary hearing. See 452 Code Mass. Regs. § 1.11 (1) (c) (1993) ("payment of the requisite filing fee is required to perfect the appeal when a party represented by counsel at Conference discharges said counsel and thereafter appeals the Conference Order"). The filing fee is justified by the need to "defray the cost of the [impartial] medical examination." G.L.c. 152, § 11A.
Murphy argues that the legislative classification distinguishing between claimants represented by counsel and those proceeding without legal representation violates the equal protection clause and art. 11. Murphy urges us to hold that the filing fee infringes on a claimant's "fundamental" rights to obtain relief and to proceed with the assistance of counsel. Thus, she claims, we should review this legislation under a standard of "strict scrutiny." Murphy argues that, because the classification is not "precisely tailored to serve a compelling state interest," we should declare it unconstitutional. Further, Murphy asserts, even if the classification does not infringe on a fundamental right, we should declare it unconstitutional *226 because it is not rationally related to any legitimate State interest.[14]
The department argues in response that the challenged classification merely "regulates economic activity" and does not infringe upon a fundamental right. The department asserts that the filing fee provisions of § 11A are an integral part of the legislative effort to establish a less litigious workers' compensation system. The department claims that the imposition of the filing fee only on claimants proceeding with the assistance of counsel is rationally related to the State's interest in deterring frivolous appeals, in defraying the cost of the impartial medical examination, and in exempting pro se claimants from the filing fee requirements. In these circumstances, the department concludes, the fee provisions survive equal protection scrutiny.[15]
The equal protection clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This language essentially mandates that "all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). The standard of review used to evaluate the constitutionality of a legislative classification under the equal protection clause varies with the nature of the challenged legislation. "The general rule is that legislation is presumed to be *227 valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440. See Paro v. Longwood Hosp., 373 Mass. 645, 649-650 (1977).[16]
In the present case, we hold that the challenged classification does not survive constitutional scrutiny even under the minimal, rational basis standard of review. Therefore, we need not decide whether, as Murphy argued, the classification infringes on fundamentally protected constitutional rights.[17]
A State may not impose additional burdens on a class of litigants in an arbitrary or capricious manner. See Lindsey v. Normet, 405 U.S. 56, 77 (1972). See also Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 83 (1988). In Lindsey, the United States Supreme Court struck down an Oregon statute requiring that tenants seeking to appeal from an eviction order post a bond equal to twice the amount of rent expected to accrue during the appellate process. The Court rejected the claim that this statute was rationally related to the State interest in deterring frivolous appeals. Lindsey, supra at 74-79. "The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive," the Court stated, "for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." Id. at 78. The Court also rejected the claim that the bond *228 requirement was rationally related to the State interest in insuring landlords against loss of rent during the appellate process. The amount at which the State set the bond, the Court held, was not calculated to reflect litigation costs incurred by landlord-appellees or actual rent accrued during the appellate process. Rather, the Court stated, "The discrimination against the poor who could pay their rent pending an appeal but cannot post the double bond is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be." Id. at 79. The Court concluded that the statute singled out a class of litigants for "arbitrary and irrational" treatment, thereby violating the equal protection clause. Id.
In Bankers Life & Casualty Co., supra, the Supreme Court reaffirmed the rule that a State may not single out a class of litigants in an arbitrary and irrational fashion. Bankers Life & Casualty Co. involved a challenge to a Mississippi statute imposing a 15% penalty on litigants who unsuccessfully appeal from a money judgment. The State of Mississippi argued that the statute expressed its interest in deterring frivolous appeals. Id. at 81. The Court ruled that, unlike the Oregon statute in Lindsey, the Mississippi statute was rationally related to the asserted State interest. The Court ruled that imposing a 15% penalty on unsuccessful appellants from money judgment was a reasonable attempt to deter frivolous appeals. The Court noted that alternatives to the statute  such as individualized determination of frivolousness or posting of bond  would either prolong the appellate process (the very evil which the statute sought to remedy) or bear no relation to the value of the underlying suit. The Court noted also that the 15% penalty applied only to judgments that were affirmed without modifications and was a "modest additional assessment." Id. at 83-84. Therefore, the Court held, the statute was less likely to deter bona fide appeals than the Oregon statute struck down in Lindsey. In these circumstances, the statute was "reasonably tailored to achieve the State's legitimate ends" and did not "single out a class of appellants in an arbitrary and irrational fashion." Id. *229 at 85. Cf. Paro v. Longwood Hosp., 373 Mass. 645, 651 (1977) (upholding imposition of bond on medical malpractice plaintiffs on ground that Legislature may have found that bulk of frivolous malpractice litigation caused by plaintiffs rather than defendants).
Like the Supreme Court of the United States, this court has upheld statutory schemes that impose additional burdens on a particular class of litigants only if such schemes are rationally related to a legitimate legislative purpose. In Old Colony R.R. v. Assessors of Boston, 309 Mass. 439, 447 (1941), this court rejected an equal protection challenge to a statute requiring persons owing a real estate tax in excess of $1,000 to pay such tax as a prerequisite to seeking an abatement. "Those paying taxes in less than this amount," the court explained, "comprise[] all the small taxpayers of the Commonwealth, including many who [have] no taxable realty other than their homes." Id. The "social and economic conditions of such taxpayers," the court reasoned, "may be different from that of those whose realty holdings represent large investments." Id. The different socio-economic conditions of the two classes of litigants, the court concluded, provided the rational basis for treating such classes in a different fashion. Id. See Ahmed's Case, 278 Mass. 180, 190, 193 (1932) (upholding statute awarding litigation costs to employees prevailing in workers' compensation case but not to successful insurers in part because legislative classification was premised on differences in litigants' socioeconomic conditions)[18]
*230 In the present case, we are unable to ascertain any rational basis for the imposition of a filing fee only on litigants proceeding with the assistance of counsel. We do not dispute that the Legislature has a legitimate interest in reducing the costs of an administrative proceeding. See United States v. Kras, 409 U.S. 434, 445 (1973); Lindsey v. Normet, 405 U.S. 56 (1972); Dandridge v. Williams, 397 U.S. 471, 486 (1970). The Legislature also may enact laws seeking to deter frivolous appeals. See Bankers Life & Casualty Co., supra. Additionally, the Legislature may lower the cost of litigation for financially disadvantaged litigants. Cf. Paro, supra at 653.
The relationship of the presently challenged classification to any of these goals, however, is "so attenuated as to render the distinction arbitrary or irrational." Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446 (1985). The department has not offered, nor can this court discern, any rational basis to conclude that imposing an additional financial hurdle on claimants proceeding with the assistance of counsel may deter frivolous appeals. The challenged classification may achieve the opposite result. Attorneys are trained to evaluate the merits of a particular case. See Goldberg v. Kelly, 397 U.S. 254, 270 (1970). Attorneys have less of a personal stake in the outcome of a litigation than their clients. Attorneys are bound by the rules of professional conduct to provide their clients with competent legal services. Pro se litigants, on the other hand, often lack the legal training necessary to evaluate legal issues, particularly those complex issues that may arise in the specialized field of workers' compensation. Pro se litigants also are more likely to be guided by the perceived injustice of having been denied compensation for injury than their attorneys would be. We see no reasonable basis to conclude that imposing a fee on claimants assisted by a trained and objective professional might deter frivolous appeals. *231 The challenged fee provision creates an incentive for claimants who have less information and a higher stake in the outcome of a case to challenge adverse determinations regardless of the merits of the case.
We also perceive no rational basis to conclude that only claimants proceeding with the assistance of counsel should be held responsible for the cost of the impartial medical examination. The attorney's fee provisions of the statute establish a fee schedule whereby a successful claimant's attorney ordinarily is entitled to a statutory fee paid by the insurer at the conclusion of the case. See G.L.c. 152, § 13A. See also Rival's Case, 383 Mass. 172 (1981). The challenged fee requirement, on the other hand, requires claimants who engage an attorney to disburse money early in the proceeding as a prerequisite to asserting their rights. The burden imposed on financially disadvantaged workers, who may be able to defer compensation of their attorneys until resolution of their claim but may not afford the fee, is particularly obvious. See Lindsey, supra at 79. See also English v. New England Medical Ctr., Inc., 405 Mass. 423, 428 (1989) (rational basis standard of review encompasses consideration of "degree of harm to the affected class").
More fundamentally, we see no rational basis to impose the entire cost of the impartial medical examination on claimants who proceed with the assistance of an attorney.[19] Such a classification assumes that these claimants have a *232 higher ability than pro se claimants to defray the costs of the medical examination. However, as the attorney's fee scheme of the workers' compensation act itself recognizes, an injured worker's decision to retain counsel bears no relation to the worker's financial means. In these circumstances, the classification merely penalizes claimants who choose to engage counsel and singles out these claimants for "arbitrary and capricious" treatment. Lindsey, supra. Bankers Life, supra.[20]
We do not lightly undertake to invalidate a statute under the rational basis standard. A party challenging the constitutionality of a legislative enactment bears the heavy burden of overcoming the presumption of constitutionality that is the starting point for courts reviewing statutes under the rational basis standard. See Cleburne v. Cleburne Living Ctr., Inc., *233 supra. See also Paro v. Longwood Hosp., 373 Mass. 645, 650 (1977). This standard, however, is not a "toothless" one. Mathews v. Lucas, 427 U.S. 495, 510 (1976). Where the plaintiff demonstrates that a challenged classification lacks any rational basis to a legitimate State interest, we must declare such classification unconstitutional. Therefore, we hold that the fee provisions of § 11A violate the equal protection clause.
Many years ago Chief Justice Rugg, in Bogni v. Perotti, 224 Mass. 152, 156-157 (1916), stated clearly the fundamental constitutional principle on which we rely:
"It is an essential element of equal protection of the laws that each person shall possess the unhampered right to assert in the courts his rights, without discrimination, by the same processes against those who wrong him as are open to every other person. The courts must be open to all upon the same terms. No obstacles can be thrown in the way of some which are not interposed in the path of others. Recourse to the law by all alike without partiality or favor, for the vindication of rights and the redress of wrongs, is essential to equality before the law."
A statute that arbitrarily and capriciously discriminates against a class of litigants violates the equal protection provisions of the Constitution of the Commonwealth. See Paro, supra at 654 (finding no "substantial difference" between protections of art. 11 and equal protection clause with respect to right of equal justice). Having determined that the challenged classification is not rationally related to a legitimate legislative purpose, we conclude that it cannot pass muster under State constitutional principles as well.[21]
*234 The case is remanded to the Superior Court for entry of a declaratory judgment consistent with this opinion.
So ordered.
NOTES
[1] The Attorney General.
[2] The fee is equal to the average weekly wage in the Commonwealth, or approximately $515.52 at the time of the present appeal.
[3] We acknowledge with appreciation the amicus briefs filed by the American Federation of State, County and Municipal Employees; Injured Workers United; Teamsters Union Local 25, Graphic Communications International Union Local 48B, International Union of Elevator Constructors Local 41, Plumbers and Pipefitters Local 104, Local 288 IUE, Teamsters Local 404, Sheetmetal Workers Union Local 63, Massachusetts Academy of Trial Attorneys, and Massachusetts Bar Association; Massachusetts AFL-CIO Council; and Mr. Paul A. Gargano.
[4] The 1991 amendment to § 11A, St. 1991, c. 398, § 30, in relevant part, states:

"(2) When any claim or complaint involving a dispute over medical issues is the subject of an appeal of a conference order pursuant to section ten A, the parties shall agree upon an impartial medical examiner from the roster to examine the employee and submit such choice to the administrative judge assigned to the case within ten calendar days of filing the appeal, or said administrative judge shall appoint such examiner from the roster. The insurer or any claimant represented by counsel who files such appeal shall also submit a fee equal to the average weekly wage in the commonwealth at the time of the appeal to defray the cost of the medical examination under this section ... provided, further, that such amount paid by a claimant shall be refunded by the insurer to any claimant who prevails at the hearing.
"...
"(3) The fee for the provision of a medical report by any impartial medical examiner engaged under this section shall be a reasonable amount approved by the commissioner, and shall be paid by the department to the physician promptly upon receipt of the report. The fee for the provision of a deposition by any impartial medical examiner engaged under this section shall be a reasonable amount approved by the commissioner, and shall be paid by the deposing party directly to the physician promptly upon receipt of the report; provided, however, that if the decision of the administrative judge is in favor of the employee, the cost of such deposition shall be added to the amount awarded to the employee and be paid by the insurer under the provisions of this chapter." (Emphasis supplied.)
[5] After oral argument, the parties informed us that Murphy and the department reached a settlement with respect to Murphy's claim for benefits. The Attorney General further notified us that the department has promulgated new regulations that effectively eliminate the filing fee requirements in cases that involve the death of an employee. Accordingly, the present appeal no longer involves a live controversy. See Attorney Gen. v. Commissioner of Ins., 403 Mass. 370, 380 (1988). We note that, although the single justice granted Murphy leave to take an interlocutory appeal to a full panel of the Appeals Court, Murphy already had obtained the relief she sought from the single justice. While the department had the right to appeal the single justice's order because it was "aggrieved" by that order, the department did not file its own notice of appeal. See G.L.c. 231, § 118, second par. (1990 ed.) ("a party aggrieved by an interlocutory order of a ... single justice of the appellate court granting a petition for relief from [an interlocutory order] may appeal therefrom to the appeals court or, subject to the provisions of section ten of chapter two hundred and eleven A, to the supreme judicial court" [emphasis supplied]).

The single justice, however, had authority to send the question of law to a panel of the Appeals Court. We recognized the propriety of his action by transferring the case to this court on our own motion. See Commonwealth v. Andover, 378 Mass. 370, 373-376 (1979).
As to mootness, the issue whether the fee provisions of § 11A violate the Federal or the State Constitution significantly affects the public interest. The parties  as well as several amici curiae  have fully briefed this issue. The parties have informed us that similar constitutional challenges to § 11A are currently pending in the Superior Court and have urged us to resolve this controversy in the present case. In these circumstances, we think it desirable to reach the merits of the case  notwithstanding the lack of a live controversy  so as to further the public interest. See Guardianship of Weedon, 409 Mass. 196, 197 (1991).
[6] We summarize the process only to the extent necessary to provide the background for our discussion of the issue at hand. Although the process is available to employees seeking benefits (claimants) as well as to insurers seeking modification or termination of benefits (complainants), we focus on those aspects of the system that affect claims brought by employees.
[7] The regulations which the Department of Industrial Accidents promulgate may be found at 452 Code Mass. Regs. § 1.00. The department recently has amended certain regulations, and all citations contained in this opinion refer to the most recent version of the pertinent regulation.
[8] The parties may agree to have the case mediated at any stage of the proceedings before the department. G.L.c. 152, § 10B (5).
[9] The parties may be represented by an attorney or by another designated representative. See G.L.c. 152, § 7C ("[a]ny party appearing before the division of dispute resolution may be heard in person or may be represented by an attorney or by any other person designated by such party").
[10] The department's "senior judge" must "periodically review and update a roster of impartial medical examiners who are certified specialists in various medical fields and who are willing to make prompt reports and be deposed." G.L.c. 152, § 11A. We note that certain cases involving a medical dispute do not require the appointment of an "impartial medical examiner." For example, an examiner is not required where the matters in dispute concern the death of an employee. See 452 Code Mass. Regs. § 1.10 (5) (1993).
[11] When feasible, the examiner must determine: (i) whether a disability exists; (ii) whether the disability is total or partial and permanent or temporary; and (iii) whether the disability has as its "major or predominate contributing cause a personal injury arising out of and in the course of the employee's employment." G.L.c. 152, § 11A.

The parties may submit relevant documents to the impartial examiner. The parties also may depose the examiner for purposes of cross-examination on receipt of his or her report. Id.
[12] The department's regulations provide that in certain cases  such as where an appeal from a conference order was filed prior to July 1, 1992, or does not involve "a dispute over medical issues as defined in 452 [Code Mass. Regs.] 1.02"  a party may offer additional medical reports. 452 Code Mass. Regs. § 1.11 (6) (1993).
[13] A party aggrieved by the decision of the judge at the hearing may trigger the fourth stage of the review process: an appeal to the reviewing board, a panel of three administrative law judges. G.L.c. 23E, § 5 (1990 ed. & Supp. 1991). G.L.c. 152, § 11. The appellant must pay a filing fee equal to 30% of the State average weekly wage, which may be waived on a showing of indigency. G.L.c. 152, § 11C. 452 Code Mass. Regs. § 1.15 (2) (1993).
[14] Murphy also argues that the filing fee violates the due process clause of the Fourteenth Amendment to the United States Constitution and comparable provisions of the Massachusetts Declaration of Rights.
[15] The parties have cited to cases involving procedural due process challenges to various administrative schemes, and they have commented in their briefs on the adequacy of the review process provided by G.L.c. 152, as amended. We do not, however, express any opinion on the adequacy of these procedures. Murphy does not argue that she has been deprived of benefits as a result of a procedurally deficient system; on the contrary, she is seeking access to the procedures provided by the system. While procedural due process cases become relevant to our discussion to the extent that they allude to such issues as the role of counsel in a judicial or administrative proceeding, we confine our discussion to the issue whether the imposition of a filing fee on claimants represented by lawyers but not on pro se claimants is constitutionally valid under the Federal and the State Constitutions.
[16] This "rational basis" standard of review does not apply when a statute classifies by race, alienage, or national origin. Courts will closely scrutinize statutes involving such suspect classifications and uphold only statutes that are "suitably tailored to serve a compelling state interest." Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). Statutes that penalize the exercise of a constitutionally-protected individual right also call for a heightened standard of review. See, e.g, Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 627-628 (1969); Shapiro v. Thompson, 394 U.S. 618, 634 (1969). See also Lee v. Commissioner of Revenue, 395 Mass. 527, 529 (1985); Dane v. Board of Registrars of Voters of Concord, 374 Mass. 152, 160 (1978).
[17] Similarly, we express no opinion on Murphy's argument that the fee requirements of § 11A violate the due process clause or comparable provisions of the Massachusetts Declaration of Rights.
[18] This court also has upheld statutes limiting the amount of damages which a particular class of litigants may recover if such statutes are rationally related to a legitimate legislative purpose. In Hallett v. Wrentham, 398 Mass. 550, 558 (1986), for example, we rejected an equal protection challenge to the $100,000 limitation on damages recoverable against the Commonwealth under the Massachusetts Tort Claims Act. We reasoned that protecting public funds from unlimited liability is a legitimate legislative purpose. We also upheld a $20,000 statutory limit on damages recoverable against charitable organizations. English v. New England Medical Ctr., Inc., 405 Mass. 423, 430 (1989). In English, we examined carefully not only the "purpose to be served by the statute," but also the "degree of harm to the affected class." Id. at 428. We acknowledged the hardship imposed by the statute on tort litigants whose injuries may far exceed the statutory cap, but we held the cap to be reasonably related to the State's legitimate interest in preserving charitable assets. Id. at 430.
[19] The Supreme Court of the United States has stated that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." Goldberg v. Kelly, 397 U.S. 254, 270 (1970), quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932). "Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the [client.]" Goldberg v. Kelly, supra at 270-271. As was already noted, we review the constitutionality of § 11A under a rational basis standard, and therefore do not reach today the issue whether the right to engage counsel is "fundamental" for purposes of equal protection analysis.

Nonetheless, we note that "the harm to the members of the disadvantaged class" occasioned by the fee provisions of § 11A also includes the substantial burden which those provisions place on the ability of a workers' compensation claimant to be heard with the aid of skilled counsel. English, supra at 429, quoting Cleburne, supra at 452 (Stevens, J., concurring). "[C]haracterizing the tests to be applied to determine the constitutional validity of legislation as `reasonable relation' and `strict scrutiny' is a `shorthand for referring to the opposite ends of a continuum of constitutional vulnerability determined at every point by the competing values involved.'" English, supra at 428-429, citing Marcoux v. Attorney Gen., 375 Mass. 63, 65 n. 4 (1978). The undisputed importance of the right to engage counsel lends further support to our conclusion that the fee provisions of § 11A do not pass constitutional muster even under minimal, rational basis scrutiny.
[20] We note that the filing fee is set at an amount that is not calculated to match the cost of the impartial medical examination, which by statute must be set at a "reasonable amount." G.L.c. 152, § 11A (3). See Lindsey, supra at 79. Compare and contrast Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71 (1987).

We are unconvinced by the department's argument that the Legislature reasonably could have concluded that claimants proceeding with the assistance of counsel should be singled out because attorneys may advance the cost of the fee and be reimbursed by the insurer if their clients' claims are successful. First, there is no evidence that this practice is customary among attorneys handling workers' compensation claims. Next S.J.C. Rule 3:07, Canon 5, DR 5-103 (B), as appearing in 382 Mass. 779 (1981), provides that an attorney may not advance litigation costs to a client unless "the client remains ultimately liable." This rule prohibits an attorney from advancing litigation costs if the attorney has no expectation of recovering such costs, the rationale being that an attorney may not acquire an interest in the subject matter of the litigation if such interest hinders the attorney's exercise of independent professional judgment. See Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 538 (1986).
[21] In the present case, the "corresponding right under the equal protection clause," Paro v. Longwood Hosp., 373 Mass. 645, 654 (1977), is the right of a class of litigants not to be singled out for "arbitrary and irrational" treatment when seeking legal relief made available by the State. See Bankers Life & Casualty Co. v. Crenshaw, 486 U.S. 71, 83 (1988); Lindsey v. Normet, 405 U.S. 56, 77 (1972). Such a right does not depend on the form of the institution that dispenses the legal relief at issue. Cf. Paro, supra (medical malpractice tribunal).