Gillespie *v.* City of Northampton.

VINCENT GILLESPIE & another[1] *vs.* CITY OF NORTHAMPTON.[2]

Hampshire. March 10, 2011. - July 14, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Municipal Corporations,* Parking place. *Motor Vehicle,* Citation for violation of motor vehicle law. *Practice, Civil,* Traffic violation, Costs. *Administrative Law,* Judicial review. *Constitutional Law,* Access to court proceedings, Equal protection of laws, Separation of powers. *Due Process of Law,* Adjudicatory proceeding. *Statute,* Validity.

In a civil action seeking a judgment declaring that the imposition of a filing fee of $275 to obtain judicial review of a final decision of a municipal parking clerk regarding a parking citation offends the Massachusetts Constitution, the judge properly granted summary judgment in favor of the defendant city, where, given that judicial review of administrative agency decisions is not a fundamental right and the statutory scheme in G. L. c. 90, § 20A ¹/₂, did not impair the exercise of any other paradigmatically fundamental right, the imposition of such a fee did not violate the plaintiffs' substantive due process rights, in that it was rational for the Legislature to aim to establish a consistent procedure and forum for appeals from administrative agency adjudications [152-155]; where the designation of Superior Court as the chosen forum for judicial review of parking citations did not violate the plaintiffs' rights to procedural due process, in that the private interest at stake (the loss of personal property in an amount as high as one hundred dollars, but in most cases between fifteen and fifty dollars) could not be regarded as precious and the risk of an erroneous deprivation of that interest was rather low, while the government interest in judicial economy and deterrence of frivolous appeals was substantial [155-158]; where the plaintiffs, who alleged that the statutory scheme in G. L. c. 90, § 20A ¹/₂, violated principles of equal protection, failed to demonstrate that there was no rational basis for the filing fees and designation of the Superior Court as the forum for judicial review, given the significant qualitative differences between alleged parking offenders and other classes of litigants existed that justified the difference in treatment [158-161]; and where the statutory scheme did not violate the purchase of justice clause of art. 11 of the Massachusetts Declaration of Rights [161-162] or the principle of separation of powers found in art. 30 of the Massachusetts Declaration of Rights [162].

[1]Edward Hamel.

[2]The city of Northampton, the original defendant, declined to respond to the plaintiffs' appellate arguments, and the Appeals Court granted a motion to intervene filed by the Attorney General and the Chief Justice for Administration and Management of the Trial Court.

CIVIL ACTION commenced in the Superior Court Department on August 22, 2005.

The case was heard by *Bertha D. Josephson*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William C. Newman* for the plaintiffs.

*William W. Porter*, Assistant Attorney General, for the interveners.

*John Holevoet*, of Wisconsin, for National Motorists Association, amicus curiae, submitted a brief.

CORDY, J. In this case, brought pursuant to G. L. c. 30A, § 14, and G. L. c. 231A, we are asked to decide whether the imposition of $275 in filing fees to obtain judicial review of a final decision of a municipal parking clerk regarding a parking citation offends the Massachusetts Constitution. Vincent Gillespie and Edward Hamel, the plaintiffs, each dispute the validity of parking citations received in the city of Northampton. They appeal from a judgment of the Superior Court that the statutory scheme that imposes such fees for review of a municipal parking clerk's adjudication of the citation, following an in-person administrative hearing, is consonant with the principles of due process, equal protection, and separation of powers. We transferred the case to this court on our own motion. We affirm.

1. *Background.* On July 19, 2005, Gillespie received two citations for parking in a prohibited zone in Northampton. He received the second citation after removing the first from his windshield and walking to the Northampton parking office to protest. Each citation carried a maximum penalty of fifteen dollars. That same day, Gillespie filed a written challenge to both citations. A hearing officer designated by the Northampton parking clerk sent him a letter upholding the validity of the first citation because his "vehicle was parked in violation of the prohibited zone ordinance." The second citation was dismissed as duplicative because it was issued less than one hour after the first.

On October 29, 2005, Hamel stopped his vehicle in front of a bakery on Main Street in Northampton and waited for his wife

who was inside. A parking officer issued him a citation, with a fine of one hundred dollars, for parking illegally in a handicapped parking space. Like Gillespie, he filed a written challenge. A hearing officer sent him a letter rejecting the challenge. At the time, Northampton did not afford persons challenging a citation the right to an in-person hearing before the parking clerk or a designated hearing officer.

2. *Statutory framework.* Municipalities may choose to enforce any "rule, regulation, order, ordinance or by-law regulating the parking of motor vehicles" according to two similar administrative frameworks as set forth in G. L. c. 90, §§ 20A[3] and 20A ½. Northampton has elected to establish the procedures in G. L. c. 90, § 20A ½ (§ 20A ½).[4] The provision begins with a familiar protocol: "It shall be the duty of every police officer who takes cognizance of a [parking] violation . . . forthwith to give the offender a notice, which shall be in tag form . . . to appear before the parking clerk of the city or town wherein the violation occurred . . . ." Each "tag form" notice, or as it is commonly called, a parking ticket or parking citation, must state the specific violation charged, as well as the established fine, and must provide an explanation of the procedures for both paying the fine and challenging the citation's validity. G. L. c. 90, § 20A ½. The statute prescribes a maximum fine of one hundred dollars for certain enumerated parking violations, such as parking within a bus stop. Fines for all other violations "shall not exceed $50." *Id.*

The alleged offender may then appear to pay the fine in person, or may mail payment of the fine to the municipality's parking clerk. *Id.* Payment of the fine shall "operate as a final disposition of the case." *Id.* An alleged parking offender may contest the citation in two ways. First, he may send to the parking clerk "a signed statement explaining his objections" and any supporting evidentiary material. G. L. c. 90, § 20A ½. The parking clerk, or a designee of the clerk, referred to as a "hearing officer," reviews the written challenge and notifies the alleged

---

[3]Under G. L. c. 90, § 20A, fifth par., the first parking citation received in a particular city or town any year is required to be automatically dismissed without the payment of any fine. Subsequent citations may be challenged in writing and in person before the parking clerk.

[4]The cities of Boston and Cambridge are required to follow G. L. c. 90, § 20A ½.

offender of the disposition of that review by mail. *Id.* Second, after denial of a written challenge, or without first lodging a written challenge, an alleged offender is entitled to a live, in-person administrative hearing.[5] *Id.* "Said hearing shall be informal [and] the rules of evidence shall not apply." *Id.* The citation is admissible in the hearing, and is "deemed prima facie evidence . . . as to the facts contained therein." *Id.*

Either a written denial or the denial of challenge following a hearing is considered an appealable final decision of the parking clerk, and subject to judicial review under the Massachusetts Administrative Procedure Act, G. L. c. 30A, § 14. Proceedings for judicial review pursuant G. L. c. 30A, § 14, are instituted in the Superior Court.[6] By statute, litigants must pay a minimum of $275 in filing fees to institute a civil action in the Superior Court. See G. L. c. 262, §§ 4A, 4C. These fees form the heart of Gillespie's challenge to § 20A ¹/₂.[7] Plaintiffs who submit an "affidavit of indigency and request for waiver" are relieved from payment of the fees after an adjudication of indigency by a clerk of the court under G. L. c. 261, §§ 27B, 27C.[8]

---

[5]A written challenge does not constitute a waiver of the alleged offender's "right to a hearing before the parking clerk or hearing officer." G. L. c. 90, § 20A ¹/₂ (§ 20A ¹/₂).

[6]"The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is, [i]n violation of constitutional provisions; . . . [i]n excess of the statutory authority or jurisdiction of the agency; . . . [u]nsupported by substantial evidence; or . . . [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7) (*a*), (*b*), (*e*), and (*g*).

[7]The fee for the entry of a complaint for judicial review in the Superior Court is $240 in addition to a twenty-dollar security fee. G. L. c. 262, § 4A. Plaintiffs must also pay a fifteen-dollar surcharge, G. L. c. 262, § 4C, and service of process costs. In this case, Gillespie paid $44.90 for service of process. The total cost of filing the complaint for judicial review in the Superior Court was $319.90.

[8]An indigent person, eligible for waiver of fees, is defined as "a person who receives public assistance under [various Federal programs] or . . . a person who is unable to pay the fees and costs of the proceeding in which he is involved or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter and clothing." G. L. c. 261, § 27A.

On July 28, 2006, the plaintiffs filed an amended complaint in the Superior Court seeking declaratory judgment that (1) Northampton violated § 20A ½ by not affording a live hearing before a parking clerk or designated hearing officer; and (2) the procedural framework of § 20A ½, namely the imposition of $275 in filing fees and the designation of the Superior Court as the forum for judicial review, is so cost prohibitive that it effectively denies aggrieved parking offenders access to the courts.[9] This, the plaintiffs argue, is violative of the guarantees of due process, equal protection, and separation of powers found in arts. 1, 10, 11, and 30 of the Declaration of Rights of the Massachusetts Constitution, as well as the access to justice principles protected by art. 11, which includes the right to be free from having to "purchase" justice.[10] The plaintiffs filed a motion for summary judgment. The judge ruled that Northampton contravened § 20A ½ by failing to grant in-person hearings. Northampton does not appeal from that judgment.[11] On the constitutional challenge, the judge granted summary judgment in favor of Northampton. The plaintiffs appealed, and we transferred the case to this court on our own motion.

3. *Discussion.* The plaintiffs launch a broad facial challenge to the constitutionality of § 20A ½ and the attendant filing fees it imposes for judicial review. We note at the outset that it is well settled that a "statute is presumed to be constitutional and every rational presumption in favor of the statute's validity is made." *Pielech* v. *Massasoit Greyhound, Inc.,* 441 Mass. 188, 193 (2004), citing *St. Germaine* v. *Pendergast,* 416 Mass. 698, 702-704 (1993). The challenging party bears the burden of

[9]The plaintiffs assert that so few parking citations are appealed to the Superior Court that in the past twenty-eight years, there are only four reported cases of further appeals to the Appeals Court. The assistant clerk for the Superior Court in Hampshire County averred that, from January 1, 2000, to September 12, 2005, there were no parking citation appeals to the Superior Court in that county.

[10]Article 11 of the Declaration of Rights of the Massachusetts Constitution provides: "Every subject of the Commonwealth . . . ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

[11]Prior to the Superior Court judgment, Northampton had already revised its parking citation appeals procedures to provide in-person hearings as required by § 20A ½.

demonstrating "beyond a reasonable doubt that there are no 'conceivable grounds' which could support its validity." *Leibovich* v. *Antonellis*, 410 Mass. 568, 576 (1991), quoting *Zeller* v. *Cantu*, 395 Mass. 76, 84 (1985). While there is a considerable measure of conceptual overlap in the due process, equal protection, and access to justice principles the plaintiffs invoke, we are obliged to treat each constitutional claim as analytically distinct. See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 648-654 (1977). We address each in turn.

a. *Due process.* The plaintiffs raise both substantive and procedural due process challenges to § 20A ½.

i. *Substantive due process.* Where a statute unjustifiably burdens the exercise of a fundamental right protected by art. 10 of the Massachusetts Declaration of Rights, the standard of review we apply is strict judicial scrutiny.[12] See *Goodridge* v. *Department of Pub. Health*, 440 Mass. 309, 330 (2003). A fundamental right is one that is " 'deeply rooted in this Nation's history and tradition,' [*Moore* v. *East Cleveland*, 431 U.S. 494, 503 (1977)] (plurality opinion) . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " *Washington* v. *Glucksberg*, 521 U.S. 702, 720-721 (1997), quoting *Palko* v. *Connecticut*, 302 U.S. 319, 325, 326 (1937). Under strict scrutiny review, a challenged statute may only survive when it is "narrowly tailored to further a legitimate and compelling governmental interest." *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993). See *Blixt* v. *Blixt*, 437 Mass. 649, 660-661, cert. denied, 537 U.S. 1189 (2003). All other statutes that do not collide with a fundamental right are subject to a "rational basis" standard of judicial review. See *Goodridge* v. *Department of Pub. Health, supra.* Under the rational basis standard, a statute is constitutionally sound if it is reasonably related to the furtherance of a valid State interest. See *id.*

---

[12] "Although art. 10 [of the Massachusetts Declaration of Rights] may afford greater protection of rights than the due process clause of the Fourteenth Amendment [to the United States Constitution], our treatment of due process challenges adheres to the same standards followed in Federal due process analysis." *Goodridge* v. *Department of Pub. Health*, 440 Mass. 309, 353 (2003) (Spina, J., dissenting), citing *Commonwealth* v. *Ellis*, 429 Mass. 362, 371 (1999).

The plaintiffs argue that judicial review of an adjudicatory decision made by an administrative body is a "venerable right" grounded in the Massachusetts Constitution and rendered "illusory" by the imposition in § 20A ½ of filing fees far in excess of the challenged fine. Without conceding that the statutory scheme does not implicate a fundamental right to court access, the plaintiffs argue that even under a rational basis standard of review, § 20A ½ bears no cognizable relationship to a valid State interest.

While the plaintiffs are well within reason to classify the role of judicial review of administrative agency decisions as "venerable," no court has concluded that it is a fundamental right under our Constitution, or that the right to bring a judicial challenge, once provided by statute, is of such a fundamental character that it may never be fettered by the payment of a filing fee. See *Longval* v. *Superior Court Dep't of the Trial Court*, 434 Mass. 718, 723 (2001), citing *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 773 (1996) (statute that requires nonindigent prisoners to pay for court filings does not abridge any fundamental right). See *Nicholas* v. *Tucker*, 114 F.3d 17, 21 (2d Cir. 1997), cert. denied sub nom. *Nicholas* v. *Miller*, 523 U.S. 1126 (1998), quoting *Roller* v. *Gunn*, 107 F.3d 227, 233 (4th Cir. 1997) ("Requiring [litigants] to make economic decisions about filing lawsuits does not deny access to the courts").

Nor does the statutory scheme in § 20A ½ impair the exercise of any other right that we have proclaimed to be paradigmatically fundamental. See, e.g, *Commonwealth* v. *Weston W.*, 455 Mass. 24, 33 (2009) (right to travel freely); *Commonwealth* v. *Knapp*, 441 Mass. 157, 164 (2004) (freedom from physical restraint); *Blixt* v. *Blixt*, *supra* at 656 (parental rights of care, custody, and control of children). We have said, "it is clear that there is no fundamental right to operate a motor vehicle," *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 269 n.5 (1992), citing *Raper* v. *Lucey*, 488 F.2d 748, 751 (1st Cir. 1973) ("we may take it as settled that such a right, federal or state, does not exist"), and as such, there is no fundamental right to park a vehicle on public property.

There being no fundamental right at stake, the statute survives constitutional review if it is rationally related to a valid govern-

ment interest. See *Goodridge* v. *Department of Pub. Health*, *supra*. Among others, two legitimate interests are advanced by § 20A ¹/₂. The Superior Court is vested with original jurisdiction to hear most appeals from administrative agency adjudications, see G. L. c. 30A, § 14 (1), and it is entirely rational for the Legislature to aim to establish a consistent procedure and forum for such appeals without weighing the individual economic interest at stake against the cost of Superior Court filing fees in each instance.[13] See *Nicholas* v. *Tucker*, *supra*. More important, especially in light of the fact that municipalities annually issue several million parking citations, § 20A ¹/₂ conserves scarce judicial resources and discourages the filing of nonmeritorious appeals. See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 648-654 (1977).

ii. *Procedural due process.* The plaintiffs further argue that the designation of Superior Court as the chosen forum for judicial review of parking citations is irrational. The Superior Court, which has exclusive original jurisdiction over, inter alia, criminal charges punishable by imprisonment in the State prison for more than five years, see G. L. c. 212, § 6; G. L. c. 218, § 27, and all civil matters where the amount in controversy exceeds $25,000, G. L. c. 212, § 3, requires compliance with rigorous discovery and other rules. To vest it with jurisdiction over routine parking disputes, the plaintiffs argue, "defies common sense." The plaintiffs further argue that by imposing disproportionately high filing fees, § 20A ¹/₂ functionally gives ultimate authority over challenged citations to the same executive agency that issued the citation, thus denying aggrieved parking offenders an impartial appeal forum. The tenor of this broad argument sounds in procedural due process, and we review such a challenge under the familiar

---

[13]The Legislature has vested the District Court, rather than the Superior Court, with jurisdiction over, inter alia, appeals from unemployment compensation decisions made by the division of unemployment assistance within the Department of Workforce Development, G. L. c. 151A, § 42; denials or revocations of firearm licenses, G. L. c. 140, § 131 (*f*); and driver's license suspensions by the registry of motor vehicles, G. L. c. 90, § 24. Because the Legislature has elected to remove certain administrative appeals from the general scheme provided by G. L. c. 30A, § 14, it does not follow that in every instance it must be considered whether the Superior Court is the proper forum in light of the economic interests typically involved in an appeal.

balancing formula announced by the United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976).

" 'Procedural due process' requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner." *Aime* v. *Commonwealth*, 414 Mass. 667, 674 (1993). See *Mathews* v. *Eldridge*, *supra*. "The fundamental requirement of due process is notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Matter of Angela*, 445 Mass. 55, 62 (2005), quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). We define the aggrieved party's interest, whether liberty or property, and abide by the general maxim that "[t]he more precious the right, the greater the protection . . . ." *Commonwealth* v. *Barboza*, 387 Mass. 105, 111, cert. denied, 459 U.S. 1020 (1982). Balancing under *Mathews* v. *Eldridge*, *supra* at 335, requires us to weigh: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." See *Duarte* v. *Commissioner of Revenue*, 451 Mass. 399, 412 (2008). In this case, the balance weighs against the plaintiffs.

First, as to the private interest at stake, alleged parking offenders stand to lose personal property, in an amount as high as one hundred dollars for serious parking offenses, but in most cases between fifteen and fifty dollars. See G. L. c. 90, § 20A $^1/_2$. This is not an entirely insubstantial interest, but, given the small sums involved, hardly one that society would regard as "precious." See *Commonwealth* v. *Barboza*, *supra*. Cf. *Goldberg* v. *Kelly*, 397 U.S. 254, 265, 270-271 (1970) (public assistance payments used by beneficiaries to procure basic life necessities is substantial interest). More to the point, for indigent persons, to whom a fine of one hundred dollars for an erroneous parking violation represents a true financial hardship, the statutory scheme waives the filing fees. See G. L. c. 262, §§ 4A, 4C; G. L. c. 261, §§ 27B, 27C.

Second, the risk of an erroneous deprivation of that interest is

rather low. Where the citation of illegally parked vehicles is susceptible to human error (i.e., a marked sign fell down or a meter was misread), § 20A ½ provides ample procedural rights to minimize the risk. Alleged parking offenders may challenge the propriety of a citation in writing, without a fee, and may offer supporting evidentiary materials, such as photographs or affidavits. G. L. c. 90, § 20A ½. They are also entitled to a live hearing and formal adjudication by the parking clerk or a designated hearing officer, as a matter of right, at no cost, and with no restrictions imposed by formal rules of evidence or discovery. *Id.* The plaintiffs raise alarm that hearing officers appointed by the parking clerk are not neutral adjudicators. However, they point to no evidence, beyond speculation, of systemic partiality.[14] These two meaningful tiers of administrative review adequately ensure that the pecuniary interest at stake is well protected against human error. Moreover, § 20A ½ affords alleged parking offenders an opportunity for judicial review, if they determine that vindication of a true error or some other reason[15] justifies payment of the ordinary, nondiscriminatory fees statutorily imposed on all civil litigants in the Superior Court. G. L. c. 262, §§ 4A, 4C. See G. L. c. 30A, § 14.

As a final matter, the government interest in judicial economy and deterrence of frivolous appeals is substantial. Municipalities issue millions of parking citations annually, and the "fiscal and administrative burdens [of] additional or substitute procedural requirements" would be overwhelming. *Mathews* v. *Eldridge*,

---

[14]The record does not contain Statewide statistics on parking citation appeals. As a guidepost, the plaintiffs cite to a newspaper article reporting that in 2004, the city of Boston alone issued 1.7 million parking citations. The article also suggests that while challenges are rare, there is no bias at the adjudicatory hearings. See Violation: Parking Ticket?! Get Out! You've Got to Fight It!, Boston Globe, Feb 6, 2005 (reporting in 2004, of 17,000 hearings in Boston, sixty per cent, or 10,200, resulted in dismissal of citations).

[15]While § 20A ½ is silent in this regard, if an alleged parking offender were subject to systematic injustice or animus, such as repeated unlawful and unwarranted citation where no violative conduct occurred, consolidation of appeals may be permitted. Mass. R. Civ. P. 42 (a), as amended, 423 Mass. 1402 (1996) ("When actions involving a common question of law or fact are pending before the [Superior] court . . . it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay").

*supra* at 335. Section 20A ½ provides procedural mechanisms to root out human error, while the filing fees imposed for formal judicial review are legitimately calculated to conserve court resources and to defray the cost of the proceedings. Especially in light of the degree of significance of the interest at stake, and the unique numerosity of parking citations, we discern no procedural due process violation. See *id.*

b. *Equal protection.* Where a statute discriminates on the basis of a suspect classification, the statute is subject to strict judicial scrutiny. *Commonwealth* v. *Weston W.,* 455 Mass. 24, 30 (2009). All other equal protection claims proceed under a rational basis analysis.[16] "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Murphy* v. *Commissioner of the Dep't of Indus. Accs.,* 415 Mass. 218, 226-227 (1993) (*Murphy*), quoting *Cleburne* v. *Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440 (1985). The plaintiffs do not contend that alleged parking offenders are a suspect class. Therefore, we review for a rational basis.

First, the plaintiffs argue that no legitimate public purpose is served by the legislative classification distinguishing alleged parking offenders from several other classes of civil litigants that are not required to press appeals in the Superior Court, and pay its attendant filing fees. To highlight this differential, they point to the procedures afforded alleged violators of other, non-parking municipal ordinances, G. L. c. 40, § 21D (providing "notice to appear" hearing before "district court judge, clerk, or assistant clerk" [without fee]), and alleged violators of all other civil motor vehicle infractions, G. L. c. 90C, § 3 (A) (4), as amended through St. 2010, c. 131, § 57 (requiring fee of twenty-five dollars for hearing before District Court clerk-magistrate and fee of fifty dollars for further appeal to District Court judge).

Here, there are significant qualitative differences between alleged parking offenders and the other classes of litigants that justify the difference in treatment. Where equal protection

---

[16]The standard for equal protection analysis under our Declaration of Rights is the same as under the Fourteenth Amendment. See *Dickerson* v. *Attorney Gen.,* 396 Mass. 740, 743 (1986).

"mandates that 'all persons similarly situated should be treated alike,' " *Murphy, supra* at 226, quoting *Cleburne* v. *Cleburne Living Ctr., Inc., supra* at 439, the Legislature may rationally impose additional procedural burdens on a particular class of civil litigants where the groups do not substantially stand in the same shoes. The only restriction is that equal protection "limits legislative discretion in delineating classifications only to the extent of forbidding 'arbitrary or irrational' classifications, or discrimination which is 'invidious.' " *Pinnick* v. *Cleary,* 360 Mass. 1, 28 (1971). In *Murphy, supra* at 230, we invalidated a legislative classification imposing a medical examination fee only on those workers' compensation claimants represented by counsel at evidentiary hearings, but not on those who appeared pro se. We concluded that the relationship of the classification to the statute's goal of reducing costs and deterring frivolous appeals was "so attenuated as to render the distinction arbitrary or irrational." *Murphy, supra,* quoting *Cleburne* v. *Cleburne Living Ctr., Inc., supra* at 446. There, the legislative classification burdened identically situated claimants vindicating the same right and operating under the same statutory framework. Here, unlike in *Murphy, supra,* the plaintiffs would require us to engage in an apples-to-oranges comparison between alleged parking offenders and traffic or municipal code violators. See *Barrington Cove Ltd. Partnership* v. *Rhode Island Hous. & Mtge. Fin. Corp.,* 246 F.3d 1, 8 (1st Cir. 2001), quoting *Dartmouth Review* v. *Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989) (in equal protection analysis, "apples should be compared to apples"). Enforcement of different municipal offenses involves varying degrees of discretion, and in those cases the differences may justify more rigorous procedural rights due to the likelihood of error. See G. L. c. 40, § 21D. By contrast, the preliminary adjudicatory process is sufficient to catch errors in parking citations.

Second, there are legitimate government interests supporting the Legislature's choice to permit formal judicial review of challenges to traffic and municipal infractions in the first instance, while providing a preliminary cost-free administrative forum for civil parking citation challenges. The penalties imposed are different. Some traffic infractions may be the subject of a

criminal action, unlike § 20A ½, where alleged offenders face only civil penalty. Cf. G. L. c. 90C, § 3 (B) (2). Moreover, the corresponding burdens placed on judicial resources militate in favor of different appeals procedures for separate classes of infractions. It is not irrational or arbitrary for the Legislature to establish an administrative process at the local level to adjudicate efficiently and effectively the millions of routine parking citation disputes while affording less numerous and more consequential appeals, in more serious matters such as traffic violations, direct review by a clerk or judge in the District Court. See *Pinnick* v. *Cleary, supra* at 17.

Next, the plaintiffs argue that Superior Court is an irrationally designated forum, where other statutes establishing administrative regimes vest jurisdiction in the District Court, with its lower filing fees, to hear certain appeals of agency adjudications.[17] See note 13, *supra*. Where no suspect classification is drawn, the Legislature is permitted to distinguish among civil litigants in providing greater or lesser procedural rights and to exercise this prerogative based on its perception of the significance of the interests involved. See *Murphy, supra* at 226-227. Once again, the deterrence of frivolous appeals and the conservation of judicial resources are legitimate legislative purposes, and the classification drawn between alleged parking offenders and those other administrative appellants routed to District Court is anchored within the boundaries of the Constitution. See *id.*

The plaintiffs further contend that the statutory scheme produces irrational results that do not advance the purpose of the legislation, where indigent offenders may press frivolous appeals without fee but nonindigent persons are deterred from filing even meritorious appeals because of the cost. As a preliminary matter, we note that we have emphasized in the past that a "statute or ordinance is not rendered unconstitutional merely because . . . the means stated in the statute is not perfectly consistent with the desired result." *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. 436, 447, appeal

---

[17]Unless otherwise set by statute, entry of a civil appeal in the appellate division of the District Court, though sixty dollars lower than in the Superior Court, still requires a $180 filing fee. G. L. c. 262, § 2.

dismissed, 464 U.S. 987 (1983), quoting *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 687 (1981). The inclusion of an indigency waiver in § 20A ¹/₂ rationally balances the Legislature's competing goals of deterring frivolous appeals while not entirely frustrating all citizens, whether capable or incapable of paying the requisite filing fees, from bringing a meritorious appeal. See G. L. c. 90A, § 20A ¹/₂.

As a final matter, we are not unmindful of the fact that Massachusetts imposes filing fees for judicial review of parking citations in excess of those imposed in most other States. See, e.g., Cal. Gov't Code § 70615 (West 2009) and Cal. Veh. Code § 40230 (West 2000) (filing fee of twenty-five dollars for court review of administrative adjudication); Conn. Gen. Stat. Ann. § 7-152b(g) and § 52-259 (2009) (Superior Court has jurisdiction over appeals from administrative adjudication with reduced filing fee of thirty-five dollars); Fla. Stat. Ann. §§ 316.1967(2), (4) (West 2006) (civil violation contest allowed in county court or traffic violations bureau). However, our duty is to ensure that the filing fees are not enacted arbitrarily or in violation of other safeguards provided by our Constitution. It is the sole province of the Legislature to set the amount of those fees. *St. Germaine* v. *Pendergast*, 416 Mass. 698, 703 (1993) ("A court is only to inquire into whether the Legislature had the power to enact the statute and not whether the statute is wise or efficient"). Whether wise or unwise, we may not calibrate such fees in precise proportionality to the interest involved. Our lens focuses only on the constitutional question. See *id.* In sum, for all the reasons discussed, the plaintiffs have failed to establish that there is no rational basis for the filing fees and designation of the Superior Court as the forum for judicial review. Contrast *Murphy, supra* at 232-233. Therefore, § 20A ¹/₂ does not violate equal protection principles.

c. *Purchase of justice.* In this case, where § 20A ¹/₂ does not reach a fundamental right or contravene the equal protection clause, we do not consider it violative of art. 11's purchase of justice clause, where the statutory scheme is supported by a rational basis. *Longval* v. *Superior Court Dep't of the Trial Court*, 434 Mass. 718, 723 (2001) ("Where, as here, the statute does not pertain to a suspect class, . . . involves a right, i.e.,

free access to the courts, that is not fundamental, . . . and is rationally related to achieving its purpose, it passes constitutional muster" [citations omitted]).

d. *Separation of powers.* The plaintiffs argue that § 20A ½, by dint of the filing fees, renders illusory the right to judicial review. As such, they contend, the statute imbues the executive branch with unreviewable authority over parking citations, in violation of the principle of separation of powers found in art. 30 of the Massachusetts Declaration of Rights.[18] The argument is without merit.[19] "[T]he exact lines between what constitutes legislative, executive, and judicial powers have never been precisely drawn." *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 656 (1977). "[W]e recognize that an absolute division of the three general types of functions is neither possible nor always desirable." *Opinion of the Justices*, 365 Mass. 639, 641 (1974). The parking clerk or the designated hearing officers, although formally municipal executive officers, are the preliminary adjudicators in a process that shares enough in common with the judiciary to pass constitutional muster. In any event, the statutory scheme that the plaintiffs challenge does, in fact, afford the opportunity for judicial review. See G. L. c. 90A, § 20A ½. See also *Nicholas* v. *Tucker*, 114 F.3d 17, 21 (2d Cir. 1997). There is no separation of powers violation.

4. *Conclusion.* For the foregoing reasons, we conclude that the plaintiffs have failed to establish that § 20A ½ is discordant with the Massachusetts Constitution, and we uphold the grant of summary judgment in favor of Northampton.

*Judgment affirmed.*

---

[18]Article 30 of the Massachusetts Declaration of Rights provides, "In the government of this Commonwealth . . . the executive shall never exercise the legislative and judicial powers or either of them . . . ."

[19]The interveners argue that the issue is waived because the plaintiffs did not raise the issue in their complaint or in support of their motion for summary judgment. Because the challenge is unavailing, we need not decide the waiver question.