NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13494

CARE AND PROTECTION OF JAYLEN.[1]


Essex.     January 5, 2024. – April 17, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.


Parent and Child, Care and protection of minor, Custody.
     Jurisdiction, Care and protection of minor, Custody of
     child, Juvenile Court, Probate Court.  Juvenile Court,
     Jurisdiction.  Probate Court, Jurisdiction, Child born out
     of wedlock.  Practice, Civil, Care and protection
     proceeding.  Statute, Construction.  Due Process of Law,
     Care and protection of minor, Child custody proceeding,
     Substantive rights.  Constitutional Law, Parent and child.



     Petition filed in the Essex County Division of the Juvenile
Court Department on March 10, 2021.

     A motion to dismiss was heard by Kerry A. Ahern, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Dawn M. Messer, Committee for Public Counsel Services, for
the child.
     Jennifer L. Kernan for Department of Children and Families.
     Roberta Driscoll-Weiss, for the father, was present but did
not argue.


--------

     [1] A pseudonym.

WENDLANDT, J.  This case lies at the intersection of two statutory schemes involving the Commonwealth's interest in the welfare of children and two departments of the Trial Court -- the Probate and Family Court and the Juvenile Court -- with overlapping jurisdiction.  The first statutory scheme provides safeguards for the care and protection of children.  See G. L. c. 119, §§ 24-26.  If a Juvenile Court judge adjudicates a child in need of care and protection, the judge may award "permanent" custody to the child's parent "qualified to give care to the child."  G. L. c. 119, § 26.  Such an order of custody is subject to "review and redetermination" at the request of a party during the pendency of the care and protection proceeding at six-month intervals.  Id.  In the present case, after custody was removed from the mother of the nonmarital child,[2] a Juvenile Court judge awarded "permanent" custody to the father.  The child filed a motion to dismiss and to close the care and protection case, contending that the Juvenile Court's custody order, without an order from a judge of the Probate and Family Court, was sufficient to award permanent custody to the father. The Juvenile Court judge denied the child's motion in light of

---

[2] The statute governing the rights and obligations of parents who are not married to each other at the time of the child's birth refers to the child as a "child born out of wedlock."  G. L. c. 209C, § 1.  We will refer to such children as nonmarital children.

the second relevant statutory scheme, which comprehensively addresses the rights and responsibilities of the parents of nonmarital children and provides that the mother of a nonmarital child "shall" have custody "[i]n the absence of an order or judgment of a [P]robate and [F]amily [C]ourt [judge] relative to custody."  G. L. c. 209C, § 10 (b).

The current practice in the Juvenile Court to resolve these seemingly imbricating schemes is to require the parent, who has been awarded permanent custody of the child in connection with a care and protection action, to seek an order of custody from the Probate and Family Court under the nonmarital child statutory scheme, G. L. c. 209C; the Juvenile Court judge will dismiss the care and protection proceeding only after a Probate and Family Court judge has issued an order regarding custody of the nonmarital child.  We agree that this practice best reflects the Legislature's intent and harmonizes the two statutory schemes. Further concluding that, in the circumstances presented here, the practice complies with due process, we affirm the Juvenile Court judge's order denying the child's motion to dismiss the care and protection case in the present matter.

1.  Background.  The relevant facts are undisputed.  In March 2021, following removal of the child from the mother, the Department of Children and Families (department) filed a care and protection petition in the Juvenile Court on behalf of the

child pursuant to G. L. c. 119, § 24 (§ 24), alleging neglect by the mother.  At that time, the mother, who never was married to the father, was the custodial parent of the child.  The father established paternity when the child was born and was listed as the father on the child's birth certificate.[3]  The father did not, however, seek custody of the child prior to the filing of the care and protection petition.[4]

Also in March 2021, the mother waived her right to a temporary custody hearing; a Juvenile Court judge approved the parents' written stipulation and granted temporary custody to the father, with conditions.  The father has maintained custody of the child since then.

---

[3] See G. L. c. 209C, § 2 ("Paternity may be established by filing with the court, the clerk of the city or town where the child was born or the registrar of vital records and statistics an acknowledgment of parentage executed by both parents pursuant to [§] 11 . . ."); G. L. c. 209C, § 11 (a) ("A written voluntary acknowledgment of parentage executed jointly by the putative father . . . and the mother of the child . . . and filed with the registrar of vital records and statistics or with the court shall be recognized as a sufficient basis for seeking an order of support, visitation or custody with respect to the child without further proceedings to establish paternity, and no judicial proceeding shall be required or permitted to ratify an acknowledgment that has not been challenged pursuant to this section").

[4] See G. L. c. 209C, § 10 (setting forth mechanism for parents of nonmarital children to obtain custody in Probate and Family Court); G. L. c. 209C, § 11 (b) (parents may, through agreement, determine custody of nonmarital children "provided[] that any such agreement . . . must be filed with a division of the [P]robate and [F]amily [C]ourt [D]epartment").

A different Juvenile Court judge (second judge) subsequently issued an order requesting that the Probate and Family Court resolve the issue of the child's custody and further ordered the father to file a complaint in the Probate and Family Court, which he did in August 2022.  The father later filed a motion for temporary orders regarding the child's custody in the Probate and Family Court matter.[5]

In January 2023, the mother waived her right to a hearing on the merits of the care and protection proceedings; instead, she stipulated that she was unfit, that the child be adjudicated in need of care and protection, and that the father maintain permanent physical and legal custody of the child.  The department, the father, and the child agreed.  Following a colloquy with the mother, the second judge found the mother currently unfit and awarded permanent physical and legal custody to the father under G. L. c. 119, § 26 (§ 26), with the condition that, inter alia, the father abide by the parenting

_____

[5] In October 2023, the underlying care and protection case was dismissed because a judge of the Probate and Family Court had granted the father temporary custody of the child.  The father subsequently filed a request that we nonetheless decide the legal issues presented by the appeal despite it being moot. We agreed and allowed the father's motion.  See Commonwealth v. Feliz, 486 Mass. 510, 513 (2020) ("we have discretion to review a case notwithstanding its mootness where the issue is of public importance and is capable of repetition yet evading review").

plan agreement executed by the parties.[6]  Per § 26 (c), the order of the second judge was subject to review and redetermination at six-month intervals.[7]

In March 2023, the child filed a motion for permanent custody to be awarded to the father and for dismissal of the care and protection case.  By then, the father had maintained custody of the child for over two years.

The second judge agreed with the undisputed position of the parties that the father presented no protective concerns, and that the father should be granted permanent legal and physical custody of the child.  Nevertheless, the judge denied the child's motion, reasoning that an order from a Probate and Family Court judge was required in order for the father to retain permanent legal and physical custody of the child, despite the order she had issued pursuant to § 26, awarding "permanent" custody to the father as part of the care and

---

[6] The parenting plan agreement, which included a schedule for the mother's parenting time, was signed by the mother and the father in January 2023; it was adopted by the second judge.

[7] As discussed infra, "permanent" custody is thus not permanent in the colloquial sense.  See Care & Protection of Thomasina, 75 Mass. App. Ct. 563, 570 (2009) (pursuant to § 26, order of "permanent" custody can be revisited during pendency of care and protection proceeding).

protection proceedings.[8]  The child timely appealed, and we allowed his application for direct appellate review.[9]

2.  Discussion.  a.  Standard of review.  This case presents a legal question as to the authority of a Juvenile Court judge under G. L. c. 119, § 26, regarding child custody matters, in light of the jurisdictional provisions of G. L. c. 209C, regarding custody of nonmarital children.  Accordingly, our review is de novo.  See Robinhood Fin. LLC v. Secretary of the Commonwealth, 492 Mass. 696, 707 (2023) (questions of pure law reviewed de novo).  See also Bank of N.Y. Mellon v. King, 485 Mass. 37, 41 (2020) (where "[t]he interpretive question[s] . . . [are] purely legal," we review them "de novo because [t]he duty of statutory interpretation rests ultimately with the courts" [citation omitted]).

The starting point of our analysis is the language of the relevant statutes, which constitutes "the principal source of insight into Legislative purpose."  City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 788 (2019), quoting Simon v. State Examiners of Electricians, 395 Mass. 238, 242 (1985).  "Clear

---

[8] Concluding, as did the second judge, that dismissal of the care and protection proceeding would in effect vacate the order of permanent custody, the father did not join the child's motion to dismiss.

[9] The father filed a late notice of appeal and joined the arguments made by the child.

and unambiguous statutory language is 'conclusive as to legislative intent.'" HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 332 (2022) (Morris), quoting Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022). However, "[w]here the statutory language is not conclusive, we may turn to extrinsic sources, including the legislative history and other statutes, for assistance in our interpretation" (quotation and citation omitted). Morris, supra at 332-333.

We strive to construe a statute "in harmony with prior enactments to give rise to a consistent body of law" wherever possible, assuming as we must that the "Legislature was aware of the existing statutes" (citation omitted). Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994). See School Comm. of Newton v Newton Sch. Custodians Ass'n, Local 454, SEIU, 438 Mass. 739, 751 (2003) ("In the absence of explicit legislative commands to the contrary, we construe statutes to harmonize and not to undercut each other"). Thus, "where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." FMR Corp. v. Commissioner of Revenue, 441 Mass. 810, 819 (2004), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975).

b. Statutory framework. We begin with a review of the statutory framework for care and protection proceedings, G. L.

c. 119, §§ 24-26, as well as the Legislature's comprehensive scheme regarding the rights of nonmarital children, G. L. c. 209C.

i. Care and protection proceedings. Where a child "is not receiving adequate care and protection, the department may file a petition . . . to summons the child's parent 'to show cause why the child should not be committed to the custody of the department or why any other appropriate order should not be made.'"[10] Care & Protection of Zeb, 489 Mass. 783, 785 (2022), quoting G. L. c. 119, § 24.[11] The Juvenile Court has jurisdiction over such petitions.[12] See G. L. c. 218, § 59 (setting forth Juvenile Court's jurisdiction over cases arising under G. L. c. 119).

If the child is adjudicated in need of care and protection, the judge may order the child committed to the department's

---

[10] When granting custody to the department, the judge generally must "certify that the continuation of the child in his home is contrary to his best interests and shall determine whether the department . . . has made reasonable efforts . . . to prevent or eliminate the need for removal from the home." G. L. c. 119, § 29C.

[11] General Laws c. 119, §§ 24-26, were enacted in 1954. See St. 1954, c. 646, § 1.

[12] In care and protection proceedings, parents are entitled to the appointment of an attorney at the State's expense. G. L. c. 119, § 29.

custody.[13]  G. L. c. 119, § 26 (b).  The judge also may "make any other appropriate order . . . about the care and custody of the child as may be in the child's best interest."  Id.  Relevant to the present action, the judge may "transfer temporary or permanent legal custody" of the child "to . . . any person, including the child's parent," who is "qualified to give care to the child."  G. L. c. 119, § 26 (b) (2) (i).  Absent "extraordinary circumstances that require continued intervention by the court, the [judge] shall enter a final order of adjudication and permanent disposition," no later than fifteen months after the care and protection petition was filed in the Juvenile Court.[14]  G. L. c. 119, § 26 (c).

ii.  Nonmarital children.  The comprehensive statutory scheme regarding nonmarital children governs three essential

---

[13] If the department meets its burden to prove parental unfitness by clear and convincing evidence, the Juvenile Court judge may "adjudge that the child is in need of care and protection."  G. L. c. 119, § 26 (b).  See Care & Protection of Stephen, 401 Mass. 144, 150-151 (1987) (department bears burden of proving, by clear and convincing evidence, that parent is unfit and that child remains in need of care and protection).

[14] The fifteen-month period is extendable by three additional months if the "[judge] makes a written finding that the parent has made consistent and goal-oriented progress likely to lead to the child's return to the parent's care and custody." G. L. c. 119, § 26 (c).  But jurisdiction over the care and protection petition is not lost by a failure to enter a final order and the findings in support thereof within the prescribed time limits.  Id.

functions:  paternity determinations, provision of child support, and custody and visitation matters.  See G. L. c. 209C, § 1 (establishing "a means for such children either to be acknowledged by their parents voluntarily or, on complaint . . . , to have an acknowledgment or adjudication of their paternity, to have an order for their support and to have a declaration relative to their custody or visitation rights ordered by a court of competent jurisdiction").

Regarding the first two functions -- paternity and child support -- G. L. c. 209C provides for concurrent jurisdiction by the District Court, the Boston Municipal Court (BMC), and the Probate and Family Court.  G. L. c. 209C, § 3 (a).[15]  Also with regard only to paternity and child support, the statute provides for concurrent jurisdiction by the Juvenile Court in limited circumstances and for limited duration.  Specifically, a Juvenile Court judge, in connection with a care and protection proceeding brought under § 24, may issue orders regarding paternity and child support provided that the § 24 proceeding commenced prior to the G. L. c. 209C proceeding and that the two

_____

[15] Actions brought in the District Court or the BMC may be transferred by any party to the Probate and Family Court, and pretransfer orders of the District Court or the BMC concerning paternity or support shall remain enforceable as an order of the Probate and Family Court.  G. L. c. 209C, § 3 (d).

proceedings are joined or consolidated.  G. L. c. 209C,

§ 3 (c).[16]

With regard to custody,[17] G. L. c. 209C states that the

District Court and the BMC "shall have no jurisdiction" to

determine custody of nonmarital children.[18]  G. L. c. 209C,

§ 3 (a).  And, while the Legislature clearly was aware of and

considered the pendency of a § 24 proceeding affecting a

nonmarital child, including presumably the power of the Juvenile

Court judge to award "permanent" custody of a nonmarital child

---

[16] Child support orders by a Juvenile Court judge are of limited duration.  See G. L. c. 209C, § 3 (e) (order for support entered by Juvenile Court judge enforceable "during the pendency" of care and protection proceeding, but will expire six months after dismissal of proceeding unless refiled beforehand in District Court, BMC, or Probate and Family Court).

[17] In actions involving custody or visitation, the "court may appoint counsel to represent either party whenever the interests of justice require."  G. L. c. 209C, § 7.

[18] Indeed, where a complaint to establish paternity or support is filed in the District Court or the BMC and the complaint also includes a request relative to custody or visitation, it "shall be filed only in the [P]robate and [F]amily [C]ourt [D]epartment" (emphasis added).  G. L. c. 209C, § 3 (a).  Similarly, where an action for paternity or support is pending or was previously adjudicated by the District Court or the BMC, and a party thereto seeks an order relative to custody or visitation, the party is instructed to file an action in the Probate and Family Court Department to determine custody or visitation.  See G. L. c. 209C, § 3 (b).  Such a filing will have the effect of transferring the original action from the District Court or the BMC to the Probate and Family Court, and "the case shall thereafter be heard only in the [P]robate and [F]amily [C]ourt [D]epartment" (emphasis added).  Id.

to a parent "qualified to give care to the child," G. L. c. 119, § 26, the statutory scheme provides that, "[i]n the absence of an order or judgment of [the] [P]robate and [F]amily [C]ourt relative to custody, the mother shall continue to have custody of a child after an adjudication of paternity or voluntary acknowledgment of parentage" (emphasis added).[19] G. L. c. 209C, § 10 (b). In addition, the statute directs that where a parent is unfit and "the other parent is fit to have custody, that parent shall be entitled to custody."[20] G. L. c. 209C, § 10 (c).

c. _Analysis_. i. _Statutory interpretation_. The child maintains that the second judge's order awarding "permanent" custody of the child to the father under § 26 sufficed to effect a permanent custodial change from the mother to the father. The child relies on G. L. c. 119, § 26 (b), which permits a Juvenile

---

[19] The statute sets forth detailed guidelines for a Probate and Family Court judge to consider when determining custody of the nonmarital child. See G. L. c. 209C, § 10 (a) (discussing goal to preserve relationship between child and primary caretaker parent if possible, and consideration to be given to child's residence during six months prior to proceedings, whether parent has established parent-child relationship or has exercised parental responsibilities, whether parents agree to joint custody, and whether parents can communicate and plan with each other in child's best interest); G. L. c. 209C, § 10 (e) (setting additional criteria to be considered when awarding custody and determining visitation).

[20] Section 10 also provides that "[n]othing in this section shall be construed . . . to affect the discretion of the [P]robate and [F]amily [C]ourt in the conduct of [a custody] hearing" (emphasis added). G. L. c. 209C, § 10 (e).

Court judge to make "any other appropriate order . . . about the care and custody of the child as may be in the child's best interest."  He also relies on G. L. c. 119, § 26 (c), which permits a Juvenile Court judge to enter a "final order of adjudication and permanent disposition" when "intervention by the court" is no longer needed.  Together, the child contends, these provisions evince the legislative intent to permit a Juvenile Court judge to enter a permanent change in custody over nonmarital children.

As is evident from our review of the statutory schemes, the child's proposed construction of § 26 would render meaningless the provision of G. L. c. 209C directing that the mother of a nonmarital child "shall" have custody "[i]n the absence of an order or judgment of a [P]robate and [F]amily [C]ourt [judge] relative to custody."  G. L. c. 209C, § 10 (b).[21]  Given this legislative directive that custody of a nonmarital child "shall" be with the mother absent an order of the Probate and Family Court, and the Legislature's express consideration of the jurisdiction of the Juvenile Court over care and protection

_____

[21] See G. L. c. 209C, § 3 (a) (District Court and BMC "shall have no jurisdiction of custody" under G. L. c. 209C); G. L. c. 215, § 4 (Probate and Family Court Department "shall have exclusive original jurisdiction of actions . . . relative to paternity, support, and custody of minor children provided for in [c. 209C] and shall have jurisdiction concurrently with the [D]istrict [Court] and [the BMC] [D]epartments of actions relative to paternity or support as provided in [c. 209C]").

proceedings involving nonmarital children, see discussion supra, the scope of the authority of a judge of the Juvenile Court in care and protection proceedings to issue "permanent" custody to the parent of a nonmarital child must be more limited than advocated by the child.  See DiMasi v. Secretary of the Commonwealth, 491 Mass. 186, 197 (2023), quoting Collatos v. Boston Retirement Bd., 396 Mass. 684, 687 (1986) ("The 'statutory expression of one thing is an implied exclusion of other things omitted from the statute'").

The limited nature of the "permanent" custody order of the Juvenile Court is bolstered by the fact that any "permanent" custody order is subject to review and redetermination in view of the current needs of the child "not more than once every [six] months" at the request of, inter alia, the department, the child, or the parents.  G. L. c. 119, § 26 (c).  See Care & Protection of Thomasina, 75 Mass. App. Ct. 563, 570 (2009).  At a review and redetermination proceeding, the Juvenile Court judge revisits the permanent custody order.  See Care & Protection of Erin, 443 Mass. 567, 571 (2005).  "This provision is 'primarily, the means by which a parent or other interested party, including the department, may bring to a judge's attention a change in the situation of a child, or of a child's parent, which might warrant reconsideration or modification of the original order adjudicating the child in need of care and

protection.'" <u>Adoption of Helen</u>, 429 Mass. 856, 861 (1999), quoting <u>Care & Protection of Isaac</u>, 419 Mass. 602, 611-612 (1995).[22]

In the case of nonmarital children, whose custody under G. L. c. 209C, § 10 (<u>b</u>), "shall" remain with the mother until an order of the Probate and Family Court to the contrary, a Juvenile Court judge, as the second judge did here, may conclude that "intervention by the [Juvenile C]ourt" is needed until the father can have the custody issue determined by a Probate and Family Court judge. G. L. c. 119, § 26 (<u>c</u>). This reading harmonizes the Legislature's directive that custody of a nonmarital child "shall" be with the mother in the absence of an order of a Probate and Family Court judge, with the Juvenile Court's limited authority to issue orders awarding permanent custody to a parent "qualified to give care" in connection with the care and protection process. G. L. c. 119, § 26 (<u>b</u>) (2) (i). Therefore, the second judge properly concluded that keeping the care and protection proceeding open was in the best interest of the child, thereby allowing the

---

[22] The party seeking a review and redetermination proceeding has the burden to go forward with credible evidence of such a change, but "the department bears the ultimate burden to prove [by clear and convincing evidence] that the child is still in need of care and protection." <u>Care & Protection of Erin</u>, 443 Mass. at 572.

father to secure custody in the forum provided by the Legislature for him to do so.

ii. Substantive due process. The child also contends that requiring the father, who has been found to be "qualified to give care" by the Juvenile Court judge, G. L. c. 119, § 26 (b) (2) (i), to obtain custodial orders in the Probate and Family Court infringes on the rights of fit parents to raise their children free from unwarranted State involvement and judicial scrutiny. To be sure, the due process clauses of the Fourteenth Amendment to the United States Constitution and of art. 12 of the Massachusetts Declaration of Rights protect the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66 (2000). Blixt v. Blixt, 437 Mass. 649, 652-653 (2002), cert. denied, 537 U.S. 1189 (2003). Nonetheless, the Commonwealth has a compelling interest in the welfare of children. Blixt, supra at 656. See Matter of McCauley, 409 Mass. 134, 136 (1991). And the child rightly does not contend either that the care and protection proceedings delineated in G. L. c. 119, §§ 24-26, or that the statutory scheme targeted to protect the welfare of nonmarital children set forth in G. L. c. 209C, are not narrowly tailored to that interest such that either process violates the Federal or State Constitutions. See Finch v. Commonwealth Health Ins. Connector

Auth., 461 Mass. 232, 236 (2012) (to pass strict scrutiny, statutory scheme "[1] must be narrowly tailored to further a legitimate and compelling governmental interest and [2] must be the least restrictive means available to vindicate that interest" [citation omitted]).

Instead, the child's argument centers on the claim that the father must be excused from pursuing a custody determination in the Probate and Family Court -- a process that has been available to the father since the child's birth -- by virtue of the fact that the child, while under the mother's care, was the subject of a care and protection proceeding during which the father was found to be "qualified to give care to the child." G. L. c. 119, § 26 (b) (2) (i). In other words, the child asserts that the Legislature's decision to limit the authority of the Juvenile Court to issue custodial orders in connection with a care and protection proceeding involving a nonmarital child violates substantive due process.

Because there is no fundamental right to a particular forum, we apply a rational basis review. See Gillespie v. Northampton, 460 Mass. 148, 153 (2011) (statutes that do not "collide with a fundamental right" subject to rational basis standard of judicial review). Where a court reviews a law for rational basis, it owes the utmost deference to the Legislature. See Carleton v. Framingham, 418 Mass. 623, 631 (1994). "Under

the rational basis standard, a statute is constitutionally sound if it is reasonably related to the furtherance of a valid State interest." Gillespie, supra, citing Goodridge v. Department of Pub. Health, 440 Mass. 309, 330 (2003). A party raising such a challenge has "a heavy burden to meet" under this standard of review," and we will recognize every rational presumption in favor of the legislation." Carleton, supra, citing American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 190 (1978).

Here, the Commonwealth has an important interest in having custody matters involving nonmarital children finally determined in one forum: the Probate and Family Court. The Legislature has set forth specific, detailed guidelines for Probate and Family Court judges to follow. See discussion supra. Such centralization of custody rationally relates to the goal of producing consistent custodial decisions and facilitates the Legislature's goal of treating marital and nonmarital children equally. See G. L. c. 209C, § 1. Providing one forum for final determinations of child custody is well within the Legislature's purview.[23] See, e.g., Exxon Mobil Corp. v. Attorney Gen., 479

---

[23] We do not address the child's belated argument that the limits on the authority of the Juvenile Court regarding nonmarital child custody matters violates equal protection. See Assessors of Boston v. Ogden Suffolk Downs, Inc., 398 Mass. 604, 608 n.3 (1986) ("Any issue raised for the first time in an

Mass. 312, 329 (2018), cert. denied, 139 S. Ct. 794 (2019) (Legislature may designate jurisdiction over certain civil actions to one or more Trial Court departments).

We are not unsympathetic to the child's protest that the requirement of seeking a final determination regarding custody in the Probate and Family Court has resulted in some delay, during which time the care and protection case remains pending and there is at least the specter of continued State involvement. But the delay cannot be placed entirely at the feet of the busy court docket; a father, like the father in the present case, who has acknowledged paternity need not wait until the institution of a care and protection proceeding by the department to seek custody of the nonmarital child. See G. L. c. 209C, § 10 (b). Rather, that avenue has been available to the father since the child's birth. The fact that a nonmarital child may be the subject of a care and protection action in the Juvenile Court does not render unreasonable the Legislature's choice to solemnize custodial orders in a different forum. See

---

appellant's reply brief comes too late, and we do not consider it"); Allen v. Allen, 86 Mass. App. Ct. 295, 302 n.11 (2014) (same). We note, however, that the Probate and Family Court has jurisdiction over modification of custody matters generally, see G. L. c. 208, § 28, and that the purpose of the nonmarital child statutory scheme is to ensure that such children are treated the same as marital children -- a goal that is achieved by centralization of custody decisions in the Probate and Family Court. See G. L. c. 209C, § 1.

Exxon Mobile Corp., 479 Mass. at 329.  In fact, where, as here, the mother has been found to be unfit and the father is fit, the Legislature has directed the Probate and Family Court to award custody to the fit parent.  See G. L. c. 209C, § 10 (c).

In any event, as a result of the process delineated in G. L. c. 119, §§ 24-26, the father has had legal custody of the child for years.  The relief provided in § 26 for review and redetermination of the custody order in this case is theoretical only because none of the parties intends to seek such relief. Indeed, the department represents that it plans to close its case with the family in response to the child achieving permanency with his father.[24]  While the potential of State involvement is no doubt unsettling, nothing in the process set forth under G. L. c. 209C "shocks the conscience" (citation omitted).  Murphy v. Commissioner of Correction, 493 Mass. 170, 176 (2023).[25]

---

[24] As the department asserts, nothing in the record suggests that the father and child "would continue to receive home visits from probation officers or that the court investigator remained involved in the case.  Nor is there any indication that a court appointed special advocate (CASA), or guardian ad litem had been appointed in this case.  And, as [the c]hild has been placed in [the f]ather's custody, there is no need for annual permanency hearings pursuant to G. L. c. 119, § 29B."

[25] We deny the department's motion to strike the child's January 11, 2024, postargument letter purportedly filed pursuant to Mass. R. A. P. 22 (c) (2), as appearing in 481 Mass. 1651 (2019).  We note, however, that we have not relied on the contents of the challenged letter in reaching our decision.

3. <u>Conclusion</u>.  Based on the foregoing, we affirm the challenged order of the Juvenile Court denying the child's motion to dismiss.

<u>So ordered</u>.